**This version includes the errata dated 13May05-e**

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 03-59

THOMAS G. JOYCE, APPELLANT,

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 6, 2004　　　　　　　　　　　　　Decided　March 22, 2005 )

*Kenneth M. Carpenter*, of Topeka, Kansas, for the appellant.

*Ralph G. Stiehm*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Richard Mayerick*, Acting Deputy Assistant General Counsel; and *Kathy A. Banfield*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief, for the appellee.

Before STEINBERG, GREENE, and HAGEL, *Judges*.

STEINBERG, *Judge*, filed the opinion of the Court. HAGEL, *Judge*, filed a concurring opinion.

STEINBERG, *Judge*: The appellant, veteran Thomas G. Joyce, through counsel, seeks review of a September 25, 2002, Board of Veterans' Appeals (Board or BVA) decision that, inter alia, concluded that November 1955, April 1960, and February 1963 Veterans' Administration (now Department of Veterans Affairs (VA)) regional office (RO) decisions, each of which had denied an award of VA service connection for a duodenal ulcer, did not contain clear and unmistakable error (CUE). Record (R.) at 1-21. The parties each filed briefs, and the appellant filed a reply brief. Thereafter, the Court ordered additional briefing from the parties, both parties filed responses, and the Court then heard oral argument in the case. The Court notes that counsel for the appellant stated

at oral argument that, on appeal, the appellant was withdrawing his arguments, as set forth in his brief (Appellant's (App.) Brief (Br.) at 6-12), that the April 1960 and February 1963 RO decisions were the product of CUE; therefore, the Court will not address those arguments, nor will the Court include the Board's analysis of those claims in this decision's factual-background discussion or address the parties' arguments with regard to those claims in this decision's discussion of the parties' contentions on appeal. For the reasons set forth below, the Court will affirm in part, reverse in part, and vacate in part the September 2002 BVA decision and remand the matter for further adjudication.

## I. Relevant Background

Veteran Thomas G. Joyce served honorably on active duty in the U.S. Army from December 7, 1953, until April 30, 1954, during the Korean Conflict. R. at 28. During his pre-enlistment medical examination, he was found to be without conditions that would disqualify him for service. R. at 30-31. At that time, his physical profile was recorded on the examination report, in box "P", which then referred to "[p]hysical capacity or stamina", as a level "1", which then signified that the examinee is "[a]ble to perform maximum sustained effort over extremely long periods", Paragraph (Para.) 12, Army Regulation (AR) 40-115 (1948) (superseded by AR 40-503 (May 9, 1956)). R. at 31. On February 16, 1954, an examination of his upper-gastro-intestinal tract was conducted; at that time, it was found that he had "a pronounced cloverleaf deformity of the duodenal bulb probably due to ulcer niche . . . not seen in the fluoroscopy because of marks [sic] spasms of the pylorus of the stomach." R. at 50. The examination report also noted a "previous ulcer reported in civilian life, about a year and [a] half ago." *Ibid*. A month later, the veteran underwent a physical examination. In the "History of Present Illnesses" section of the examination report, it was noted that the veteran had "had epigastric pain [and] vomiting for 4 or 5 years" and "for approx[imately] 1 year he ha[d] noted small flecs of bright red blood in [his] vomitus." R. at 40. The report also indicated that a workup at the University of Kansas (KU) Medical Center (MC) in May 1953 "revealed 'ulcers'". *Ibid*.

On April 13, 1954, a re-examination of his upper-gastro-intestinal tract was conducted; that examination report noted that his "duodenal deformity . . . has shown no essential change since the previous examination of . . . Feb[ruary 19]54" and that, although "[t]here was no demonstrable ulcer

2

niche at th[at] time, the previously reported pseudo[]diverticulum remain[ed]." R. at 51. ("Pseudodiverticulum", also referred to as "false diverticulum", is defined as "an intestinal diverticulum due to the protrusion of the mucous membrane through a tear in the muscular coat." "Diverticulum" is defined as "a circumscribed pouch or sac of variable size occurring normally or created by herniation of the lining mucous membrane through a defect in the muscular coat of a tubular organ." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1204 (28th ed. 1994).) An April 1954 Army Medical Board (Medical Board) report (1) recorded a diagnosis of "ulcer duodenal . . . not obstructed[,] EPTE [(existed prior to entrance into service)], not service aggravated"; (2) listed the veteran's physical disqualification as existing prior to entry of the current period of military service; (3) noted that the physical disqualification "ha[d] not been aggravated by reason of that military service" and that it "was not incurred during or aggravated by any prior period of military service"; and (4) included a recommendation for separation from service. R. at 65. In the examination summary attached to its report, the Medical Board found that the veteran was "poorly motivated for the service and had marked increase in symptoms after being drafted." R. at 66

On April 30, 1954, the veteran was separated from active duty (R. at 28); his discharge examination report stated that he had an "[u]lcer, duodenal . . . not obstructed" and had been "[h]ospitalized at [the] US Army Station Hospital, Fort Riley, Kansas, from 22 March 1954 to 21 April 1954." R. 33-34. His physical profile was recorded on that report, in box "P", as a level "4", which then indicated that the individual has one or more medical conditions or physical defects of such severity that his/her physical capacity is "[b]elow [the] minimum standards for induction", Para. 12, AR 40-115. R. at 34. On November 3, 1955, he filed with a VARO an application for disability compensation (C&P application) for "ulcers - 1953 aggravated". R. at 76-79. On November 30, 1955, the RO denied service connection for the veteran's duodenal ulcer on the ground that it "was not service incurred or aggravated." Supplemental (Suppl.) R. at 1-2. In that decision, the RO relied on the fact that "[t]he records reveal that the veteran gives the history of having stomach trouble 4 or 5 years prior to his induction and in May 1953 he was found to have [an] ulcer." Suppl. R. at 2.

In February 1993, the veteran attempted to reopen his previously and finally disallowed service-connection claim. R at 136. In a February 1997 hearing-officer decision, the veteran was

3

awarded VA service connection for his duodenal ulcer on the basis that "this condition, which existed prior to military service, permanently worsened as a result of service." R. at 416. In April 1998, he filed a claim of CUE as to the November 1955 RO decision. R. at 546-50. The Board in July 1998 determined, inter alia, that the 1955 RO decision did not contain CUE. R. at 564, 576-81. On appeal of that BVA decision to this Court, the veteran argued for reversal of the Board decision as to his CUE claim because "[t]he record contained no evidence [that] supported a finding that the veteran suffered from an ulcer at the time that he entered service. . . . [and] contained no evidence of a 'specific finding' that the onset of the veteran's ulcer during service was due to the natural progress of the disease." R. at 763. The Secretary conceded that a remand was warranted; he asserted that the 1998 Board decision denying the CUE claim was in error because the Board had considered evidence not properly before it in the context of a CUE claim and had failed to provide an adequate statement of reasons or bases for its decision. R. at 695, 734-35. As to the latter assertion of error, the Secretary specifically stated as to the 1998 Board decision:

> [T]he Board did not adequately discuss whether the presumption of aggravation applied and if so, how it was rebutted. . . . The Board's determination with regard to whether evidence of record at the time of the 1955 decision showed aggravation simply pointed to the service department's finding that the condition was not aggravated. The Board's reasons and bases with regard to aggravation were deficient.

R. at 735 (citation omitted). In a single-judge order dated March 2001, the Court vacated the July 1998 BVA decision and ordered the Board to readjudicate the veteran's CUE claim "in accordance with the parties' pleadings, which will be made part of the [veteran's] claims file on remand." R. at 688-89. In the September 25, 2002, BVA decision here on appeal, the Board again, inter alia, concluded that the 1955 RO decision denying service connection for the veteran's duodenal ulcer did not contain CUE. R. at 9-19. In reaching that conclusion, the Board first noted that the evidence before the RO in 1955 consisted of (1) the veteran's service medical records (SMRs) (R. at 30-31, 33-75), (2) the Medical Board report (R. at 57-58, 63-66), (3) the veteran's 1955 C&P application (R. at 76-79), and (4) the veteran's Form DD 214 (R. at 28), and then reasoned:

> [I]t was the physicians themselves who determined that the veteran's proper diagnosis was of a duodenal ulcer and that the ulcer had

4

preexisted service and not been aggravated during service. Thus, the RO was relying, in accordance with the governing regulation in effect at the time, upon the judgment of medical professionals to establish these medical facts. . . . [T]he Board is unable to discern the type of undebatable error which the Court has held to constitute [CUE] so as to warrant reversal of the RO's 1955 denial.

Having determined that the veteran's ulcer disease pre[]existed service, the RO then correctly turned to the question whether the pre[]existing ulcer disease had been aggravated during the veteran's four months of service. . . . Although there was no specific finding in the medical evidence of record in 1955 that the veteran's ulcer had merely recurred[,] the Medical Board's report, which was of record and was considered by the RO, contained the conclusion that the veteran's ulcer disease was not aggravated by service. In the absence of any evidence to the contrary, other than the veteran's own implicit contentions, the Board can only find that the RO in 1955 reviewed the correct facts and applied the correct law to reach a reasonable conclusion. The Board concludes that the 1955 RO decision denying service connection for a duodenal ulcer was not tainted by [CUE] and thus reversal is not warranted.

R. at 14-15.

## II. Contentions on Appeal

The appellant argues for reversal of the September 2002 Board decision; he asserts that the Board erred by failing to consider and apply *Akins v. Derwinski*, 1 Vet.App. 228 (1991) (finding CUE in RO's failure in 1946 to apply Veterans Regulation (VR) No. 1(a), part I, paragraphs (paras.) 1(b), (d) (1943)). App. Br. at 6-12. He contends that the Board "overlooked" the provisions of VA Regulation 1063(I) (1946) [hereinafter VA Reg. 1063(I)] (implementing regulation for forerunner of 38 U.S.C. §§ 1111 and 1153), regarding the presumption of soundness upon entry into service and the presumption of aggravation, because the record before the RO in 1955 "contained no evidence that the increase in severity of [his] ulcer condition was **the natural progress** of [his] pre-service ulcer condition." Br. at 8. He states that the Court in *Akins, supra*, addressed VR No. 1(a) and determined that a "'specific finding' requirement" was "essential to establish the natural progress of the disease, as found in [VA Reg.] § 1063(I)"; he asserts that "had the Board considered and applied

5

*Akins*, as required by 38 U.S.C. § 7104(a), the Board would have vacated and revised the November 1955 [RO d]ecision." Br. at 8-9.

The Secretary counters that the September 2002 BVA decision set forth the entire text of VA Reg. 1063(I), and, therefore, the appellant's argument on that point is without merit. Secretary's (Sec'y) Br. at 9. He argues that the appellant's reliance on the text of that provision is misplaced in that the appellant "ignores that the [RO] in 1955 . . . would not have had to have found clear and unmistakable evidence that an increase was the result of the natural progression of the disease, if it could have concluded that there was no permanent increase in disability." *Ibid.* He contends that the appellant's argument "ignores . . . the possibility that the presumptions in question would not have attached in this case." Br. at 10. The Secretary does, however, propose a remand of the matter in order for the Board to provide an adequate statement of reasons or bases for its decision; specifically, he concedes that the Board "failed to make any finding as to whether a reasonable fact[]finder . . . could have found that there was no permanent increase in disability, or, alternatively, whether such a fact[]finder could have found that any such increase was the result of the natural progression of the disease in question." Br. at 4-5.

In reply, the appellant argues that the RO had failed to apply correctly the presumption of soundness because the facts of record, as it existed in 1955, evidenced a "marked increase in [his] symptoms after being drafted" (Reply at 3-4) and that the Board therefore erred by "fail[ing] to recognize that the presumption of soundness statute requires . . . VA to bear the burden of showing the absence of aggravation in order to rebut th[at presumption]" (Reply at 6-7). In support of his argument, the appellant points to a 1944 opinion of the chief legal officer, then called the Solicitor, of the Veterans' Administration interpreting the 1943 enactment of section 9 of Public Law 78-144. In accordance with the Solicitor's opinion, which the appellant asserts (without citation to authority) was binding on the RO in 1955, he argues that "under the presumption of sound[ness], claimants were not required to make a preliminary showing of an increase in disability during service." Reply at 4-6. The appellant further argues that the instant case is indistinguishable from *Akins, supra,* and *Sondel v. West*, 13 Vet.App. 213, 221 (1999), in that there is "no basis whatsoever to conclude that the RO followed the extant statute[,] which presumes that the preexisting condition not noted at entrance, but noted during service, was aggravated by service." Reply at 7.

6

In June 2004, the Court issued a supplemental briefing order directing the parties to address the impact on this case of (1) the opinion of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Wagner v. Principi*, 370 F.3d 1089 (Fed. Cir. 2004), (2) this Court's holding in *Jordan v. Principi*, 17 Vet.App. 261, 273 (2003), *aff'd sub nom Jordan v. Nicholson*, __ F.3d __ (Fed. Cir. 2005), No. 04-7034, 2005 WL 590654 (Fed. Cir. Mar. 15, 2004), and (3) the 1944 VA Solicitor's opinion. In *Wagner,* the Federal Circuit held that 38 U.S.C. § 1111 requires that VA, in order to rebut the section 1111 presumption of soundness, must show, by clear and unmistakable evidence, that a veteran's disability existed prior to service ***and*** that it was not aggravated during service. *Wagner*, 370 F.3d at 1096. In *Jordan,* this Court held that the Board did not err by failing to apply in a 1983 BVA decision a presumption of aggravation as part of the presumption of soundness under 38 U.S.C. § 1111 (formerly 38 U.S.C. § 311), because the Board was bound to apply the Secretary's regulations in effect at the time of that 1983 decision being collaterally attacked. *Jordan*, 17 Vet.App. at 273.

The appellant filed a supplemental brief arguing that *Wagner, supra*, supports his position that the 1955 RO should have afforded him the benefit of the presumption of soundness and that the BVA thus erred in determining that the RO had applied correctly the law extant at the time of its 1955 decision. App. Suppl. Br. at 2-3. He further asserts that the Federal Circuit's holding in *Wagner* "must be applied by this Court retroactively" because that decision represents "not a change in law, but rather . . . a judicial determination regarding what the statute has **always** meant." Suppl. Br. at 3 (citing *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313 n.12 (1994)). The appellant contends, in contrast to the position taken in his reply brief, that the 1944 VA Solicitor's opinion, although "both supportive and confirming of the interpretation . . . in *Wagner*[,] . . . is not relevant to the disposition of this appeal." Suppl. Br. at 4. As to the applicability of *Jordan, supra*, the appellant contends that, although both *Jordan* and the instant case involve an interpretation of section 1111, the disposition of the instant case "is controlled by this Court's prior interpretation of . . . [VR No.] 1(a), [p]art I, para[.] 1(b), . . . in *Akins*[, *supra*]", and the appellant thus "respectfully submits that *Jordan* . . . is neither relevant to nor necessary for this Court's consideration of the disposition of this appeal." *Ibid*.

The Secretary responds that "[b]ecause *Wagner* was not decided in the context of a claim of

[CUE] in an earlier decision, it has no bearing on the case at hand." Sec'y Suppl. Br. at 11. He then states that "the holding in *Jordan* supports the conclusion that the *Wagner* decision has no bearing on this case." Suppl. Br. at 12. The Secretary does note that subsequent to the 1955 RO decision the "and was not aggravated by" language was deleted from the applicable regulatory language. Suppl. Br. at 9. (In February 1961, 38 C.F.R. § 3.63(b) and (d) were recodified as 38 C.F.R. §§ 3.304 and 3.306(d), respectively, and the language "and was not aggravated by service" was deleted from the then-new § 3.304 and most of what had been paragraph (d) was dropped. 38 C.F.R. § 3.304 (Supp. 1962).) He contends, however, that a "plausible basis existed for interpreting that 1955 regulation as requiring only clear and unmistakable evidence that the disability preexisted service." *Ibid*. As to the Solicitor's opinion, the Secretary agrees with the appellant that that opinion has no relevance to the case at bar. Suppl. Br. at 12-13.

### III.  Analysis

#### A.  Applicable Law and Regulation

*1.  CUE Law and Regulation*:  An RO decision that has become final, as has the November 1955 RO decision at issue here, generally may not be reversed or amended in the absence of CUE. *See* 38 U.S.C. § 5109A (codifying into law VA regulation 38 C.F.R. § 3.105(a) (1996)); 38 C.F.R. § 3.105(a) (2004); *see also* 38 U.S.C. §§ 5108, 7105(c); *cf.* 38 C.F.R. § 3.400(q)(2) (2004) (providing that when previously disallowed claim is reopened and allowed on basis of new and material evidence in form of service department records, effective date is date such disallowed claim was filed). Section 3.105(a) of title 38, Code of Federal Regulations, provides:

> Where evidence establishes [CUE], the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of [CUE] has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a). The CUE claim presented here is a collateral attack on a final RO decision. *See Crippen v. Brown*, 9 Vet.App. 412, 418 (1996); *see also Fugo v. Brown*, 6 Vet.App. 40, 44 (1993).

8

In *Russell v. Principi*, the Court defined CUE as follows:

> Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied. . . . [CUE is] the sort of error which, had it not been made, would have manifestly changed the outcome . . . [, an error that is] undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made.

*Russell*, 3 Vet.App. 310, 313-14 (1992) (en banc); *see Bustos v. West*, 179 F.3d 1378, 1380 (Fed. Cir. 1999) (expressly adopting "manifestly changed the outcome" language in *Russell*, *supra*). "A determination that there was [CUE] must be based on the record and the law that existed at the time of the prior . . . decision." *Russell*, 3 Vet.App. at 314. "In order for there to be a valid claim of [CUE], . . . [t]he claimant, in short, must assert more than a disagreement as to how the facts were weighed or evaluated." *Id*. at 313; *see Damrel v. Brown*, 6 Vet.App. 242, 245 (1994). Moreover, a CUE claim must identify the alleged error(s) with "some degree of specificity". *Crippen*, 9 Vet.App. at 420; *Fugo*, *supra* (concluding that "to raise CUE there must be some degree of specificity as to what the alleged error is and . . . persuasive reasons must be given as to why the result would have been *manifestly* different"). *Russell* also established that, when the Court considers a Board determination that there was no CUE in a prior final RO decision, the Court's review is limited to deciding whether the Board's conclusion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", 38 U.S.C. § 7261(a)(3)(A); *see Damrel*, *supra* (discussing section 7261(a)(3)(A) standard of review applied to CUE claims), and whether it is supported by an adequate statement of "reasons or bases", 38 U.S.C. § 7104(d)(1). *See Beyrle v. Brown*, 9 Vet.App. 377, 382 (1996); *see also Russell*, 3 Vet.App. at 315; *Eddy v. Brown*, 9 Vet.App. 52, 57 (1996).

In *Kent v. Principi*, the Federal Circuit held as to judicial review of BVA decisions on CUE claims:

> [A]s we have previously held, the "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" standard of review employed by the . . . Court [of Appeals for Veterans Claims (CAVC)] contemplates *de novo* review of questions of law. As we said in *Lane v. Principi*, [339 F.3d 1331, 1339 (Fed. Cir. 2003)

9

(*Lane II*):] "In the first place, both section 7261(a)(1) ('decide all relevant questions of law') and section 7261(a)(3)(A) ('otherwise not in accordance with law') necessarily contemplate *de novo* review of a legal issue such as the Board's interpretation of a regulation." *Id.* Indeed, in the present case, the [CAVC] expressly noted that CUE may be shown where "the statutory or regulatory provisions extant at the time were incorrectly applied."

*Kent*, 389 F.3d 1380, 1384 (Fed. Cir. 2004) (citation omitted). Five months before *Kent* was issued, this Court had concluded in like fashion as to the standard of review applicable in CUE claims to Board determinations regarding the correct application of statutory or regulatory provisions; specifically, in *Andrews (Edward) v. Principi*, in response to a remand from the Federal Circuit for us "to decide the proper **standard(s)** for [our] review of the Board's determination . . . respecting CUE", *Andrews,* 18 Vet.App. 177, 180 (2004) (quoting Federal Circuit's *Andrews* decision), we stated that there are two aspects of BVA decisions on CUE claims that the Court reviews as matters of law – whether the claimant "has presented a valid CUE allegation" and "whether an applicable law or regulation was not applied." *Id.* at 182. The Court's de novo standard of review as to the first aspect – that is, whether "a viable CUE allegation ha[ving] been presented" – was already established expressly in the Court's caselaw, *see Lane v. Principi*, 16 Vet.App. 78, 83 (2002) (citing *Phillips v. Brown*, 10 Vet.App. 25, 30 (1997) (applying "nondeferential de novo standard of review" to whether CUE claim was presented below)), *aff'd, Lane II, supra*. The second aspect, nondeferential review regarding whether an applicable law or regulation was not applied or was applied incorrectly, was, by implication, ratified by *Kent, supra*, in terms of the correct application of the "otherwise not in accordance with law" prong of the section 7261(a)(3)(A) standard of review. *See Russell*, 3 Vet.App. at 319-20 (concluding in CUE case that prior final RO decision contained error "as a matter of law"); *Akins*, 1 Vet.App. at 232-33 (same). In this regard, we note that a failure to apply, or apply correctly, an applicable law or regulation in the decision being collaterally attacked must be shown undebatably. In the event of such an undebatable error, the Board's failure to find, in the decision on appeal, such an error would be at least not in accordance with law if not also arbitrary, or capricious, or an abuse of discretion. *See Sondel*, 13 Vet.App. at 220 (determining preliminarily and then confirming that Board's failure to apply specific-finding requirement in VR No. 1(a) rendered "Board's denial of the CUE claim . . . 'not otherwise in accordance with law'" (quoting

10

38 U.S.C. § 7261(a)(3)(A)); *Akins*, 1 Vet.App. at 233 (holding that Board decision finding no CUE in 1946 RO decision that had not applied VR 1(a) was "not in accordance with law"). Hence, *Kent* and *Andrews* were stating nothing new in this regard. The words "not in accordance with law" form an independent prong of the section 7261(a)(3)(A) standard-of-review language; that is, in order to affirm a Board decision that there was no CUE, the Court must find that the Board decision was not "arbitrary, [or] capricious, [or] an abuse of discretion, or otherwise not in accordance with law". In order to vacate such Board decision, the Court need find that only one of these criteria was violated by the Board.

   *2. Law and Regulation applicable at time of 1955 RO decision:*  At the time of the 1955 RO decision, the governing law applicable to wartime veterans, which had been enacted by Congress in the form of a regulation prescribed by the President in 1933, describing basic entitlement to service-connected compensation benefits, the presumption of soundness, and the presumption of aggravation of a preexisting condition, was found in VR No. 1(a), part I, paragraphs 1(a), (b), and (d). (The governing law applicable to peacetime veterans on this point is VR. No. 1(a), part II.) These paragraphs are currently codified at 38 U.S.C. §§ 1110 (formerly 38 U.S.C. § 310), 1111 (formerly 38 U.S.C. § 311), and 1153 (formerly 38 U.S.C. § 353), respectively, without substantive change. As to the presumption of soundness, VR No. 1(a) then provided as follows:

> (b) For the purposes of paragraph 1(a) hereof every person employed in the active military or naval service shall be taken to have been in sound condition when examined, accepted[,] and enrolled for service except as to defects, infirmities[,] or disorders noted at time of the examination, acceptance[,] and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed prior to acceptance and enrollment *and was not aggravated by such active military or naval service*.

VR No. 1(a), part I, para. 1(b), *as amended by* Pub. L. No. 78-144 § 9(b), 57 Stat. 554-560 (1943) (emphasis added). VR No. 1(a) then provided the following as to the presumption of aggravation:

> (d) That for the purpose of paragraph 1(a) hereof a preexisting injury or disease will be considered to have been aggravated by active military service as provided for therein where there is an increase in disability during active service *unless there is a specific finding that the increase in disability is due to the natural progress of the disease*.

11

VR No. 1(a), part I, para. 1(d) (1943) (emphasis added). The implementing regulation for the forerunner of section 1111 was found at 38 C.F.R. § 3.63 (1949). The VA regulatory provisions applicable to the instant case at the time of the November 1955 RO decision provided in pertinent part:

> (b) For the purposes of paragraph 1(a), Part I, Veterans' Regulation No. 1(a), as amended July 13, 1943 (38 U.S.C. ch. 12), every person employed in active service shall be taken to have been in sound condition when examined, accepted[,] and enrolled for service except as to defects, infirmities[,] or disorders noted at the time of the examination, acceptance[,] and enrollment or where clear and unmistakable evidence demonstrates that the injury or disease existed prior to acceptance and enrollment *and was not aggravated by such service*. . . .
>
> . . . .
>
> (d) "Clear and unmistakable" means obvious or manifest. Accordingly, evidence which makes it obvious or manifest, [sic] that the injury or disease under consideration existed prior to acceptance and enrollment for service will satisfy the requirements of the statute. The requirement of the law is that claims to which the above-cited presumptions apply be denied only on the basis of evidence which clearly and unmistakably demonstrates that the disease did not originate in service, or, *if increased in service, was not aggravated thereby*.

38 C.F.R. § 3.63(b), (d) (1949) (emphasis added). Paragraph (i) of that regulation provided, in pertinent part, the following as to "increase in service", a factor that had not been addressed at all in the 1943 Public Law that had amended para. 1(b) of VR No. 1(a) as quoted above:

> (i) Under Regulation 1(a), Part I, paragraphs 1(a), (b) and (d), as amended July 13, 1943, (38 U. S. C. ch. 12), injury or disease, apart from misconduct disease, noted prior to service or shown by clear and unmistakable evidence, including medical facts and principles, to have had inception prior to enlistment *will be conceded to have been aggravated where such disability underwent an increase in severity during service unless such increase in severity is shown by clear and unmistakable evidence*, including medical facts and principles, *to have been due to the natural progress of the disease*. Aggravation of a disability noted prior to service or shown by clear and unmistakable evidence, including medical facts and

12

principles, to have had inception prior to enlistment *may not be conceded where the disability underwent no increase in severity during service* on the basis of all the evidence of record pertaining to the manifestations of such disability prior to, during and subsequent to service. . . . Recurrences, acute episodes, symptomatic fluctuations, descriptive variations and diagnostic evaluations of a preservice injury or disease during service or at the time of discharge are not to be construed as establishing increase of disability in the absence of sudden pathological development or advancement of the basic chronic pathology during active service such as to establish increase of preexisting disability during service.

38 C.F.R. § 3.63(i) (1949) (emphasis added). In 1949, VA Reg. 1063 was codified in 38 C.F.R. § 3.63; paragraphs (B), (D), and (I) in VA Reg. 1063 were identical to the 1949 regulatory provisions quoted above. 38 C.F.R. § 3.63 (1949). Although there were intervening changes to § 3.63 between 1949 and 1955, none of the changes are pertinent to the language of concern at this point.

### B. CUE Attack on the 1955 RO decision

At the outset, we stress that we are not directly reviewing the 1955 RO decision for CUE, but, rather, reviewing the 2002 BVA determination on that issue in order to determine whether that BVA decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law", 38 U.S.C. § 7261(a)(3)(A); *see Andrews*, 18 Vet.App. at 183 (noting that Court may not "'conduct plenary review of the merits of the original decision'" (quoting *Archer v. Principi,* 3 Vet.App. 433, 437 (1992)); *Sondel*, 13 Vet.App. at 220 (quoting *Russell*, 3 Vet.App. at 315). Furthermore, we note that our review of the 2002 BVA decision must be done within the context of the law and evidence at the time of the 1955 RO decision, *see Russell*, 3 Vet.App. at 314 – in other words, at a time when the RO need not have discussed the evidence that it considered, or have stated its factual or legal reasoning or that it was applying the clear-and-unmistakable-evidence standard in its decision – in order for the Court to determine whether the Board was arbitrary, or capricious, or abusing its discretion, or acting otherwise not in accordance with law in concluding that the RO could reasonably have reached the conclusion that it did based on the law and evidence then extant, *see Natali v. Principi*, 375 F.3d 1375, 1379-81 (Fed. Cir. 2004) (holding that 1945 RO's finding that Mr. Natali's disability was "'due to a defect in the form and structure of the eye, held to be of a congenital or developmental origin,'" although "not phrased in the language of [VR No. 1(a) was] . . . fully

13

equivalent to factual findings that Mr. Natali's disability . . . was not aggravated by . . . service" and that "although the . . . [RO] did not expressly state that it had made its findings based on 'clear and unmistakable evidence,' the board's statement that there was 'no evidence of any superimposed disability during service which could have caused or aggravated the congenital condition' demonstrates that the . . . [RO] understood that its findings on those issues needed to satisfy a high standard of proof");[1] *Pierce v. Principi,* 240 F.3d 1348, 1355-56 (Fed. Cir. 2001) (holding that, given presumption of validity that attaches to RO decisions and fact that 1945 RO was not required to set forth factual bases for decision, in absence of evidence to contrary RO is presumed to have made requisite factual findings); *Crippen*, *supra* (stating that 38 U.S.C. § 5104(b) was added, by Pub. L. No. 101-237, § 115(a), 103 Stat. 2062, 2065-66 (1989), effective February 1, 1990, to require RO to specify in decision evidence considered and reasons for disposition and that prior to that amendment ROs were not required to do so). Thus, in order to establish CUE in a pre-February-1990 RO decision, it must be clear from the face of that decision that a particular fact or law had not been considered in the RO's adjudication of the case. *See Eddy*, 9 Vet.App. at 58 (holding that "[s]ilence in a final RO decision made before February 1990 cannot be taken as showing a failure to consider evidence of record"); *cf. Russell,* 3 Vet.App. at 319 (holding that pre-February-1990 RO's denial of ***existence*** of probative evidence of record constituted undebatable error in failing to consider all evidence of record as required by VA regulation, 38 C.F.R. § 3.303(a) (1971)).

   ***1. Presumption of Soundness***:   We deal first with the question of the presumption of soundness, because if it applies and is not rebutted by clear and unmistakable evidence then "the veteran's claim is one for service connection [based on incurrence in service]." *Wagner*, 370 F.3d at 1096. The Federal Circuit characterized that situation as follows:

> This means that [if such an award were made] no deduction for the
> degree of disability existing at the time of entrance [would] be made
> if a rating is awarded. *See* 38 C.F.R. § 3.322 [(2004)]. On the other
> hand, . . . . [i]f the presumption of aggravation under section 1153

---

[1]   The Court notes with interest, however, (1) that in *Natali v. Principi*, 375 F.3d 1375, 1379-81 (2004), the Federal Circuit seemed to assume that the interpretation of 38 U.S.C. § 1111 that was provided in *Wagner v. Principi*, 370 F.3d 1089, 1097 (Fed. Cir. 2004), applied retroactively to VR. No. 1(a), Part 1, paras. 1(b), (d); and (2) that in *Patrick v. Principi*, No. 03-7003, 2004 WL 1530869, 103 Fed. Appx. 383 (Fed. Cir. July 2, 2004) (nonprecedential), the Federal Circuit remanded a CUE case for consideration of *Wagner, supra,* in connection with the application of 38 U.S.C. § 1111.

14

arises, the burden shifts to the government to show a lack of aggravation by establishing "that the increase in disability is due to the natural progress of the disease."

*Wagner*, *supra* (footnote and citations omitted). In other words, the veteran may be entitled to a higher disability rating if the presumption of soundness applies and is not rebutted than if aggravation is found under section 1153 and its forerunners.

Under the law as it existed at the time of the November 30, 1955, RO decision, a veteran was presumed to be in sound condition when no injury or disease was noted upon entry into service, unless clear and unmistakable evidence established that the injury or disease existed prior to enlistment and was not aggravated by service, *see* Pub. L. No. 78-144 § 9(b); at that time, Korean Conflict veterans were eligible to benefit from the wartime presumption of soundness, *see* Pub. L. No. 84-239, 69 Stat. 497 (Aug. 4, 1955). In evaluating the 1955 RO decision for CUE, the Board concluded that that decision was not the product of CUE because the 1955 RO had determined correctly that the appellant's ulcer had preexisted service and was not aggravated thereby. R. at 14. Pertinent to the question of preexistence, the evidence before the 1955 RO consisted of the following: (1) The appellant's statements "that he had had intermittent epigastric pain and vomiting" for four to five years, as recorded in the Medical Board account (R. at 72); (2) the Medical Board's recitation that the appellant had indicated that he had had a workup at KU medical center in May 1953 and was then treated for ulcers (*ibid*.); (3) the appellant's SMRs indicating "duodenal ulcer" (R. at 37-44); and (4) the appellant's C&P application for service connection based on aggravation (R. at 76-79). In light of this evidence, the Court cannot conclude, despite the appellant's argument to the contrary, that it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law for the Board to determine that there was clear and unmistakable evidence at the time of the 1955 (pre-February-1990) RO decision, notwithstanding that the RO did not expressly so state, *see Natali, supra*, that the appellant's ulcer had preexisted service and that the RO decision thus did not contain CUE. *See* 38 U.S.C. § 7261(a)(3)(A); *Damrel, supra*.

Having determined that the appellant's ulcer condition preexisted service, the Board was then required to consider whether the RO in 1955 had been presented with clear and unmistakable evidence that his ulcer condition, in the words of VR No. 1(a), "was not aggravated by [his] service."

15

VR No. 1(a), part I, para. 1(b); 38 C.F.R. § 3.63(b) (1949); *see Sondel,* 13 Vet.App. at 218. As set forth in part III.A.2, above, the applicable VA regulation provided that aggravation, for purposes of the presumption of soundness, was to be conceded if a preexisting condition underwent an increase in severity during service, unless such increase was shown by clear and unmistakable evidence to have been due to the natural progress of the disease or injury. *See* 38 C.F.R. § 3.63(i) (1949). In no event was aggravation to be conceded "where the disability underwent no increase in severity during service." *Ibid*. As to increase in severity, the evidence before the 1955 RO consisted of the following: (1) The February 16, 1954, and April 13, 1954, SMR reports of the upper-gastro-intestinal tract examination and re-examination (R. at 50, 51); (2) the Medical Board summary noting a "marked increase in [the appellant's] symptoms after being drafted" (R. at 72); and (3) the physical-profile notations, in box "P" of his SMR entry and exit examination reports, of an increase from level "1" to "4" (R. at 34, 31), which indicated that at the time of separation he suffered from a physical defect or medical condition, such as a "hernia[,] cardiovasuclar disease, asthma, [or] peptic ulcer", Para. 6(a), AR 40-115, of such severity that he did not meet the "minimum standards for induction", Para. 12, AR 40-115. Indeed, there is no indication that the organic defect signified by the "4" physical-profile notation in box "P" was considered to be remediable or temporary. If that were the case, the physical-profile notation in box "P" would have contained either the suffix "R", which was "used to indicate that the individual has a remediable physical defect", Para. 7(a), AR 40-115, or "T", which was "used to indicate that the individual has a remediable physical defect temporary in nature", Para. 7(b), AR 40-115.

In this regard, the Court notes that the Medical Board's ***conclusion*** that the appellant's ulcer condition was "not service aggravated" (R. at 66) could, as we conclude immediately below, have been based only on an implicit finding of natural progression because that Medical Board expressly found a "marked increase in symptoms after being drafted" (*Ibid*.). Even though the 1955 RO decision is entitled to the presumption of validity, *see Natali* and *Pierce*, both *supra*, it is not conclusively so presumed; here, although the in-service medical-examination reports were neutral as to whether there was an increase in severity, all of the other evidence showed a permanent increase. The Court thus holds that, because no reasonable factfinder could in 1955, as did the RO, have applied 38 C.F.R. § 3.63(a) (1954) (requiring that "[d]eterminations as to service[]connection

16

should be based on review of the entire evidence of record in the individual case") to the uncontroverted evidence then before the RO so as to find that there was not a permanent increase in the severity of the appellant's ulcer in service, *cf.* R. at 418 (hearing-officer decision awarding service connection for duodenal ulcer that had "permanently worsened during service"), the Board decision was not in accordance with law in concluding that the RO had not erred undebatably in its 1955 decision to the extent that the RO's denial was based on a finding of nonaggravation of the appellant's preexisting ulcer condition. *See Russell*, 3 Vet.App. at 119-20 (finding error, as "a matter of law", in RO's violating 38 C.F.R. § 3.303(a) (1964) (successor to above § 3.63(a) requirement) by "not considering [particular evidence] then in the record or mak[ing] an erroneous factfinding, or both"); *see also Sondel*, 13 Vet.App. at 216 (stating that "CUE may be based on a showing 'that there was *no* evidence before the RO that could have supported denial of the claim on the merits; that is, [that] *all* of the evidence militated in support of the claim'" (quoting *Crippen*, 9 Vet.App. at 422, and citing *Link v. West*, 12 Vet.App. 39, 45 (1998) (quoting *Crippen, supra*)). In other words, because all the evidence of record in November 1955 supported the claimant's position, there was only one permissible view of the evidence and the CUE challenge thus does not involve the weighing or reweighing of evidence, there being no countervailing evidence on the negative side of the scale. *Cf. Andrews v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (stating that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous" (citing *United States v. Yellow Cab Co.*, 338 U.S. 338, 342 (1949)).

Accordingly, the Court holds that, insofar as the 2002 Board concluded that the 1955 RO did not err undebatably **to the extent** that the RO based its finding of nonaggravation on a lack of increased severity in service of the appellant's preexisting ulcer condition, that decision was not in accordance with law. *See* 38 U.S.C. § 7261(a)(3)(A); *Kent* and *Andrews*, both *supra*; *see also Sondel*, 13 Vet.App. at 221-22 (holding that Board failure to conclude that there was no in-service aggravation of preexisting condition, given absence of "specific finding" of natural progression was "'not otherwise in accordance with law'" (quoting section 7261(a)(3)(A)). The Court will therefore reverse the Board decision to that extent. The Court thus need not determine whether the increased-severity prerequisite was improperly applied at the time of the 1955 RO decision – that is, whether the holding in *Wagner, supra*, had retrospective application – because there would have been error

in any finding that a lack of such an in-service increase was shown by clear and unmistakable evidence. *See* VR No. 1(a), part I, para. 1(d).

The inquiry does not, however, end with this determination regarding undebatable error as to an in-service increase in severity. The regulatory provisions in effect in 1955 further provided that the aggravation prong of the presumption of soundness could be rebutted by a showing "by clear and unmistakable evidence" that any increase was "due to the natural progress of the disease". 38 C.F.R. § 3.63(i) (1949). The Board determined, in its 2002 decision on appeal, that the RO's conclusion – that the appellant's ulcer condition was not aggravated by service – was reasonable in light of there being no evidence to contradict the findings contained in the Medical Board report. R. at 14. Specifically, the Board noted that the Medical Board report "contained the conclusion that the [appellant's] ulcer disease was not aggravated by service." *Ibid*. Although the Medical Board report does not contain specific analysis in support of its conclusion, it appears to the Court that that conclusion could have been based on any of three implicit findings: (1) That the appellant's ulcer condition did not increase in severity during service; (2) that any increase was not permanent; or (3) that any increase was the result of the natural progress of the ulcer, *see Maxson v. West*, 12 Vet.App. 453, 459-60 (1999), *aff'd sub. nom Maxson v. Gober*, 230 F.3d 1330 (Fed. Cir. 2000) (holding that presumption of aggravation "is not for application" when "clear and convincing [sic] evidence . . . demonstrate[s] . . . that the appellant sustained no permanent increase in disability during service"); *Hunt v. Derwinski*, 1 Vet.App. 292, 297 (1991) (holding that "[t]emporary or intermittent flare-ups during service of a preexisting injury or disease are not sufficient to be considered 'aggravation in service'"). However, based on the evidence before the Medical Board in 1954, only the third possible alternative basis could be sustained here because (1) the Medical Board report also stated specifically that the appellant had suffered a "marked increase in symptoms after being drafted" (R. at 72) and (2), as indicated above, the Court does not believe it possible to conclude reasonably that the appellant's ulcer condition did not undergo a permanent increase. Thus, it is not possible to conclude reasonably, based on that same evidence, that the Medical Board implicitly found that the appellant's ulcer condition did not undergo a permanent increase in severity.

That leaves the possibility that the Medical Board could have determined implicitly that the increase in severity was the result of the natural progression of the condition. Although the RO

18

decision did not expressly state that it based its decision on having concluded that the Medical Board made such an implicit finding, it would not have been error for the RO to have done so, nor for the Board to have concluded, on that basis, that the RO's decision was reasonable. *See Natali, Pierce*, and *Crippen*, all *supra*. Thus, the Court holds that it was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law for the Board to have found no CUE insofar as the 1955 RO may have based its determination of nonaggravation on an ***implicit*** finding, by clear and unmistakable evidence, of natural progression by the Medical Board. *See* 38 U.S.C. § 7261(a)(3)(A); *Natali, Pierce*, *Crippen,* and *Damrel*, all *supra*. Accordingly, the Court will affirm the September 2002 BVA decision insofar as it determined that the 1955 RO's conclusion – that the presumption of soundness under VR No. 1(a), part I, para. 1(b), had not been rebutted – was not the product of CUE. Although the Court notes that the Board's analysis on this point was grossly deficient in that it failed to discuss (1) increase in severity or natural progression in connection with its conclusion as to the rebuttal of the presumption of soundness, *see* 38 U.S.C. § 7104(d)(1), and (2) the applicability of the clear-and-unmistakable-evidence standard to the RO's adjudication in 1955, the Court has already remanded this case to correct a reasons-or-bases deficiency and has, in the foregoing analysis, been able to carry out effective judicial review, *see Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990). Hence, a remand to provide the Board still another opportunity to furnish an adequate statement of reasons or bases would be superfluous.

    *2. Presumption of Aggravation*: That leaves the question whether the Board's determination that the presumption of aggravation was not applied in a clearly and unmistakably erroneous way by the 1955 RO was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. For the reasons that follow, we hold that the Board decision was not in accordance with law in this respect.

    As a threshold matter, the presumption of aggravation (presently set forth in 38 U.S.C. § 1153) is generally triggered by evidence that a preexisting disability has undergone an increase in severity in service. *See Maxson*, 12 Vet.App. at 460. Thus, having concluded in part III.B.1, above, that the Board's decision was not in accordance with law in concluding that the 1955 RO decision did not err undebatably insofar as it had found no permanent increase, it follows that the presumption of aggravation was triggered in this case. Under VR No. 1(a), a preexisting condition that increased

in severity during service will be considered to have been aggravated by service "unless there is a *specific finding* that the increase in disability is due to the natural progress of the disease." VR No. 1(a), part I, para. 1(d) (emphasis added); *cf*. 38 U.S.C. § 1153 (containing same requirement); 38 C.F.R. § 3.306(a) (2004). It appears, however, that the Board applied the "clear and unmistakable evidence" standard contained in 38 C.F.R. § 3.63(i) (1949) without regard to the "specific finding" language of VR No. 1(a). R. at 11, 14. The text of § 3.63(i), although in keeping with the presumption of soundness because it is virtually identical to the language of VR No. 1(a), part I, para. 1*(b)*, is significantly at odds with VR No. 1(a), part I, para. 1*(d)*, because it does not contain the "specific finding" language. *Compare* VR No. 1(a), part I, para. 1*(d)*, *with* 38 C.F.R. § 3.63(i) (1949). It seems apparent to the Court that the standard for rebutting the presumption of aggravation found in VR No. 1(a) part I, para. 1*(d)*, in November 1955 required that any such "specific finding" of natural progression be explicitly made, which the Court believes to be in many cases – and certainly in this one – a more stringent (and more favorable to the veteran) standard than the "clear and unmistakable evidence" standard by which to rebut the aggravation prong of the presumption of soundness in 1955. *See* BLACK'S LAW DICTIONARY 1406 (7th ed. 1999) (defining "specific" as "explicit"); WEBSTER'S NEW WORLD DICTIONARY 479 (3rd College ed. 1988) (defining "explicit" as "clearly stated and leaving nothing implied; distinctly expressed; definite; distinguished from IMPLICIT"); *see also Barnett Bank, N.A. v. Nelson*, 517 U.S. 25, 38 (1996) (setting forth definition of "specifically" and contrasting "specific" with "implicit").

Indeed, in *Akins*, this Court addressed the presumption of aggravation under VR No. 1(a) and held the "specific finding" language quoted above to be "dispositive". *Akins*, 1 Vet.App. at 232. The Court stated there that, because the record at the time of the 1946 RO (*Akins*) decision being collaterally attacked did not "contain the *specific findings* required to establish natural progression of a disease", the RO's "failure to observe the requirements of [the] regulation [sic] . . . constituted, as a matter of law, clear and unmistakable error". *Ibid* (bracketed material in original) (emphasis added). The Court thus reversed the BVA decision denying the CUE claim there and remanded the matter with an instruction to the Secretary "to amend the 1946 [RO] decision to award service connection and determine the appropriate disability rating for [the] appellant". *Id.* at 233. In *Sondel*, we relied "strictly" on *Akins* and concluded that the Board's denial of CUE in the 1947 RO (*Sondel*)

decision being collaterally attacked in *Sondel* was "'not otherwise in accordance with law'" because the Board had not noted "any medical evidence indicating, let alone making a 'specific finding', that the symptomatology for which the veteran was discharged represented a natural progression of a preexisting condition"; the Court further noted that "the Board could not have discussed such a specific finding because no such finding [was] contained in the record that had been before the RO in 1947." *Sondel*, 13 Vet.App. at 219-20 (quoting 38 U.S.C. § 7261(a)(3)(A); *Akins, supra*). These analyses in *Sondel* and *Akins* demonstrate that the Court there was requiring that the "specific finding" be one made in writing. We agree that, under these circumstance, the only way to determine whether such an explicit, as distinguished from implicit, finding was actually made is to locate one that was in the record at the time of the decision being collaterally attacked. *See* BLACK'S LAW DICTIONARY and WEBSTER'S NEW WORLD DICTIONARY, both *supra*. In addition, although noting that *Akins, supra*, did not address the disparity between VR No. 1(a) and regulatory § 3.63(i), the Court held in *Sondel* that "[t]he administrative regulation could not have altered a provision in the VR, and the Court finds no evidence that it was intended to do so", and thus concluded as to wartime veterans "that the Secretary must have intended the revised presumption of aggravation . . . to be at least as beneficial . . . as the presumption applicable to peacetime veterans." *Sondel*, 13 Vet.App. at 220. Significantly, the implementing regulation in 38 C.F.R. § 3.63(k) (1949) for VR No. 1(a), *part II*, para. 1(a), which provided for the peace-time-service presumption of aggravation, contained the same "specific finding" language found in VR No. 1(a), part I, para. 1(d). That same requirement is now contained in 38 U.S.C. § 1153 and 38 C.F.R. § 3.306(a) (2004) and applies equally to wartime and peacetime service. As this Court held in *Sondel*, *supra*, the "specific finding" language of VR No. 1(a), part I, para. 1(d), is a prerequisite for rebutting the wartime presumption of aggravation, and, thus, its omission from the regulatory language of 38 C.F.R. § 3.63(i) (1949) does not permit a reading that natural progress can be found ***only*** by "clear and unmistakable evidence".

In the instant case, as in *Sondel* and *Akins*, both *supra*, it is undisputed that the RO made no such "specific finding", and that the record before the RO in 1955 in the instant case did not contain any such finding, that the increased severity of the appellant's ulcer condition was due to the natural progression of the disease, as was then required by VR No. 1(a), part 1, para. 1(d). Although the Secretary argues that *Sondel* and *Akins*, both *supra*, are distinguishable from the instant case in that

21

here the Court is not presented with "a situation where the condition which preexisted service led to 'other diseases' causing or contributing to discharge" (Br. at 10), the text of VR No. 1(a), part 1, para. 1(d), does not support that distinction; therefore, *Sondel* and *Akins*, both *supra*, control the resolution of this question. *See Bethea v. Derwinski*, 2 Vet.App. 252, 254 (1992) (stating that panel decisions constitute "binding precedent" unless overturned by en banc opinion of this Court or decision of Federal Circuit or U.S. Supreme Court). In this regard, the Federal Circuit's holding in *Natali, supra*, is distinguishable because there the Court concluded that the 1945 RO decision being attacked collaterally had found that "'the increase in loss of vision in service is considered to be the result of natural progress.'" *Natali*, 375 F.3d at 1380 (quoting 1945 RO decision). Thus, because this Court has previously held in *Sondel,* 13 Vet.App. at 218, that a specific finding of natural progression is required to rebut the wartime presumption of aggravation in VR No. 1(a), part 1, para. 1(d), and because neither the 1955 RO decision nor any medical evidence then in the record on appeal contains[2] in the instant case any such specific finding, the Court holds in the instant case that the Board decision was not in accordance with law. That is so because it cannot be concluded reasonably that that 1955 RO decision did not contain an undebatable error insofar as it determined that the presumption of aggravation, under VR No. 1(a), part 1, para. 1(d) and 38 C.F.R. § 3.63(i) (1949), had been rebutted on the basis of an implicit Medical Board finding that the increase in disability was due to the natural progress of the disease. *See* 38 U.S.C. § 7261(a)(3)(A) (requiring Court to set aside Board decisions found to be . . . "not otherwise in accordance with law"); *Sondel* (applying that standard to reach same conclusion as in *Akins*, 1 Vet.App. at 232, which held that it was "undebatable" that the 1946 RO did not consider the "specific finding" requirement in VR. No. 1(a)); *Damrel* and *Akins,* both *supra*. Accordingly, the Court will also reverse the Board decision to that extent. Having held that the Board erred in not concluding that the 1955 RO had erred

_____

[2] As to the specific-finding requirement, the Court notes the Secretary's interpretation of the analogous provision (applicable to peacetime service) in 38 C.F.R. § 3.63(k), propounded at oral argument, that the words "will be met" in the second sentence of that regulation suggest that the "specific finding" could be made by *other than* "a finding of a constituted [VA] rating agency". *See* 38 C.F.R. § 3.63(k) (1949) ("[a] specific finding that the increase in disability is due to the natural progress of a disease will be met, for purposes of Part II, paragraph 1(a), of Regulation 1(a), by a finding of a constituted rating agency of the Veterans' Administration based upon available evidence of a nature generally acceptable as competent to show that an increase in severity of a disease or injury, or of the disabling effects thereof, or acceleration in progress of a disease was that normally to be expected by reason of the inherent character of the condition, aside from any extraneous or contributing cause or influence peculiar to military service").

undebatably in the instant case by finding that the presumption of aggravation was rebutted in this case, we next turn to the issue of service connection. *See Cotant v. Principi*, 17 Vet.App. 116, 132 (2003).

    *3. Service Connection:* The Board was not called upon to address the question of service connection because it had concluded that the RO could reasonably have found that the presumption of aggravation was rebutted. As the Court stated in *Cotant*, "[i]n order for a preexisting condition aggravated in service to be found to be service connected, the three so-called *Caluza* [*v. Brown*, 7 Vet.App. 498, 507 (1995),] elements must be satisfied." *Cotant*, *supra*. In order for the appellant's CUE claim to succeed here, he must show that, based on the evidence and law at the time of the 1955 RO decision, the outcome would have been manifestly different, that is, that service connection by aggravation would undebatably have been awarded in 1955 had the RO not erred regarding the presumption of aggravation. *See Bustos* and *Russell*, both *supra*; *see also Sondel,* 13 Vet.App. at 220-21. In *Sondel*, we addressed specifically under which circumstances the Court could reverse outright and under which circumstances it would remand to the Board on the question "whether [the] error would have caused a manifest change in the outcome of the veterans' original claim." *Sondel*, 13 Vet.App. at 221. The Court held:

> We thus reaffirm today that, when it is clear, on the face of the decision being assailed for CUE, that the error alleged did in fact occur and would manifestly have changed the outcome of the case, the Court will reverse, rather than only vacate and remand, as to the BVA decision. This holding is consistent with the holdings of this Court and other courts that a remand is unwarranted when it would serve only to fulfill a procedural duty that would unnecessarily delay and burden agency resources.

*Ibid*. (citing *Bigelow v. Va.*, 421 U.S. 809, 826-27 (1975), and *Consol. Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 814 (Fed. Cir. 1990)).

    Based on the evidence of record here, remand to the Board for factfinding is necessary in order for the service-connection determination to be made, because the Court does not have the authority to engage in de novo factfinding. *See Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000). This is the same situation that existed in *Cotant, supra, Mason (Sangernetta) v. Brown*, 8 Vet.App. 44, 53 (1995)*,* and *Russell*, *supra*, that is, the Board had **not** addressed the manifest-

outcome-change CUE prerequisite, and it was not clear on the face of the evidence in the record on appeal "that the correction of the error would have changed the outcome – that is, that service connection would have resulted", *Russell*, 3 Vet.App. at 320 (remanding for Board to consider service-connection aspect of particular CUE claim that Board had failed to decide); *Mason*, 8 Vet.App. at 53 (remanding for Board to "determine whether, on the entire evidence of record before the RO in 1988 (including the lay statements), the evidence establishes manifestly that the correction of the error would have changed the outcome – that is, that service connection would have resulted"); *see also Cotant,* 17 Vet.App. at 133 (remanding for Board to consider whether nexus element was unnecessary in light of 38 C.F.R. "§ 3.303(b) [(2002)], relating to chronicity or continuity of symptomatology", which "ha[d] not been addressed by the Board").

At a minimum, therefore, the Court should generally not reverse a Board CUE-claim denial where the Board did not address an essential aspect of the CUE claim. We note that in *Sondel* and *Akins*, on which we rely today in large part, the Court did reverse the Board's denial of the CUE claim and direct that the RO decision involved be revised, based on CUE, so as to award service connection for the disability in question. *Sondel*, 13 Vet.App. at 222; *Akins*, 1 Vet.App. at 233. In both of those cases the appellant's disability (in *Sondel*, right-thigh neuromuscular pain, resulting from aggravation of preexisting surgical removal of benign tumor from right thigh resulting in medical discharge; in *Akins*, loss of eye, resulting from aggravation in service of glaucoma condition assumed to have preexisted but not shown by specific finding to have resulted from natural progression of glaucoma) was unquestionably present upon discharge and the appellant applied for VA service connection within one month after discharge, *Sondel*, 13 Vet.App. at 215; *Akins*, 1 Vet.App. at 230. Under those circumstances, there would be no need to show a then-current condition and a nexus between that condition and the veteran's service, *see Hampton v. Gober*, 10 Vet.App. 481, 482 (1997) (holding that "diagnosis of . . . condition . . . in separation examination report provides evidence of both a current . . . condition and a relationship to service" where application for VA compensation for that condition was filed one month after separation examination). Hence, in *Akins* and *Sondel* the elements of service connection were clear on the face of the record before the RO decision being attacked collaterally and remand would have served "only to fulfill a procedural duty that would unnecessarily delay and burden agency resources" to decide

24

whether "the error alleged . . . would manifestly have changed the outcome of the case" had it not been committed. *Sondel*, 13 Vet.App. at 221. That is not the situation in the instant case. Moreover, in *Sondel*, the Board had determined that "any error committed by the RO in 1947 would not have resulted in a manifestly different outcome", *Sondel*, 13 Vet.App. at 222.[3] Accordingly, as in *Russell* and *Mason*, we will vacate the Board decision as to its denial of CUE in the 1955 RO decision and remand for the Board to make the 1955 service-connection determination. *See Russell*, 3 Vet.App. at 420; *Mason, supra*; *see also Cotant, supra*.

## IV. Conclusion

On the basis of the foregoing analysis, the record on appeal, and the parties' pleadings, and having "take[n] due account of the rule of prejudicial error" under 38 U.S.C. § 7261(b)(2), the Court affirms that part of the September 2002 BVA decision that found no CUE in the 1955 RO decision insofar as the RO found that the presumption of soundness was rebutted, and reverses those parts of the September 2002 BVA decision that found no undebatable error in the 1955 RO decision insofar as the RO found that the appellant's ulcer condition underwent no permanent increase during service and that the presumption of aggravation had been rebutted. The Court vacates the BVA decision's denial of CUE and remands the matter for expeditious issuance of a readjudicated decision on the service-connection question, supported by an adequate statement of reasons or bases, *see, e.g.,* 38 U.S.C. §§ 5109A, 7104(a), (d)(1), 7261; VR No. 1(a), part I, paras. 1(b), (d); 38 C.F.R. § 3.105(a) (2004); *see Russell, Cotant,* and *Mason,* all *supra, Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991); *cf.* 38 C.F.R. § 3.63(k) (1949); *Sondel* and *Akins,* both *supra*, all consistent with this opinion and in accordance with 38 U.S.C. § 7112 (as added by the Veterans Benefits Act of 2003, Pub. L. No. 108-183, § 707(b), 117 Stat. 2651, 2673) (requiring Secretary to "take such actions as may be necessary to provide for the expeditious treatment by the Board of any claim that is remanded to the Secretary by the Court"); *see Vargas-Gonzalez v. Principi*, 15 Vet.App. 222, 225-30 (2001) (holding that section 302 of Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302,

---

[3] It does not appear from the Court's opinion in *Akins, supra,* that the Board had addressed whether consideration of the "specific finding" requirement would have resulted in the award of service connection, but *Akins* was decided long before the en banc Court in *Russell, supra,* set forth the manifest-outcome change CUE prerequisite.

108 Stat. 4645, 4658, predecessor of section 7112, applies to all elements of a claim remanded by the Court or Board), and in accordance with all applicable law and regulation. *See Allday v. Brown*, 7 Vet.App. 517, 533-34 (1995); *see also Fenderson v. West*, 12 Vet.App. 119, 126 (1999) (providing for consideration of staged ratings in connection with initial award of service connection). On remand, the appellant will be free to submit additional evidence (to the extent appropriate in a CUE claim) and argument on the remanded claim, and the Board is required to consider any such evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). A remand by this Court or by the Board confers on an appellant the right to VA compliance with the terms of the remand order and imposes on the Secretary a concomitant duty to ensure compliance with those terms. *See Stegall v. West*, 11 Vet.App. 268, 271 (1998). A final decision by the Board following the remand herein ordered will constitute a new decision that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the Board's new final decision is mailed to the appellant. *See Marsh v. West*, 11 Vet.App. 468, 472 (1998).

AFFIRMED IN PART; REVERSED IN PART, VACATED IN PART, AND REMANDED.

HAGEL, *Judge*, concurring: I write separately only to express my disagreement with the majority's use of *Hampton v. Gober*, 10 Vet.App. 481 (1997), to justify the result in *Akins v. Derwinski*, 1 Vet.App. 228 (1991), and *Sondel v. West*, 13 Vet.App. 213 (1999).

The majority states that the appellants in *Akins* and *Sondel* had disabilities that were unquestionably present at discharge and that they had applied for service connection within one month after discharge. *Ante* at 23. The majority concludes that the Court properly directed awards of service connection in those cases without remanding for a determination of whether the elements of service connection had been satisfied because the circumstances in those cases eliminated the need to show a then-current disability and a nexus to service. *Id.* To support its conclusion, the majority cites *Hampton.*

In *Hampton*, the evidence of record included a separation examination report that reflected a diagnosis of a knee condition, and the appellant had filed a claim for service connection within approximately one month of his separation examination. *Hampton*, 10 Vet.App. at 482. Although the Court held that the examination report constituted some evidence of both a current disability and a nexus to service, the majority omits from its discussion that that evidence was deemed sufficient

only to satisfy the then-existing and less demanding well-grounded-claim requirement, thereby triggering VA's duty to assist the appellant in obtaining evidence to substantiate his claim. *See id.* Ultimately, the Court remanded for the Board to order an examination that addressed the elements of service connection. *See id.* at 483. Therefore, *Hampton* does not stand for the proposition for which it is used by the majority, i.e., that *service connection* is established when a claimant demonstrates that a disability was unquestionably present at discharge and that a claim for service connection was filed within one month after discharge. To support further my belief that *Hampton* does not provide proper authority for the result reached in *Akins* and *Sondel*, I note that *Akins* preceded *Hampton* and that *Sondel*, which relied heavily on *Akins* and postdated *Hampton*, did not acknowledge or rely in any way on the Court's decision in *Hampton*. *See Sondel*, 13 Vet.App. at 219 ("The applicability of *Akins* to the instant matter is obvious; the facts of this case are indistinguishable from those in *Akins*.").

In sum, any justification by the majority of the result reached by the Court in *Akins* and *Sondel* by means of a citation to *Hampton* is in my view an unconvincing attempt to reconcile the contrasting results in *Akins*, *Sondel*, *Cotant v. Principi*, 17 Vet.App. 116, 132-33 (2003), and the case we decide today. In the absence of convincing authority reconciling the results reached in those cases, the Court risks reaching inconsistent outcomes in cases involving similar circumstances. I believe that our jurisprudence would benefit from a more careful examination of these issues.