Adam J. NATALI, Claimant–Appellant,

v.

Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.

No. 03–7227.

United States Court of Appeals, Federal Circuit.

July 19, 2004.

Michael L. Calhoon, Baker Botts L.L.P., of Washington, DC, argued for claimant-appellant.

James D. Colt, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and James M. Kinsella, Deputy Director. of counsel on the brief were Richard J. Hipolit, Deputy Assistant General Counsel; and Ethan G. Kalett, Attorney, United States Department of Veterans Affairs, of Washington, DC. of counsel was Nancy Kim, and Joseph Trautwein, Attorneys, United States Department of Justice.

Before BRYSON, GAJARSA, and DYK, Circuit Judges.

BRYSON, Circuit Judge.

Adam J. Natali appeals from a decision of the Court of Appeals for Veterans Claims ("the Veterans Court"). The court affirmed a decision of the Board of Veterans' Appeals denying Mr. Natali's claim that a 1945 Veterans Administration rating decision contained clear and unmistakable error ("CUE"). Because Mr. Natali has not shown that any error in the process leading to the 1945 rating decision would have altered the result in this case, we affirm the decision of the Veterans Court.

I

Mr. Natali served on active duty in the United States Army from November 1940 until November 1944. Upon his enrollment, Mr. Natali was given a physical examination that included an assessment of his vision. The report from the physical examination noted that Mr. Natali had 20/70 vision in both eyes, corrected to 20/20 in his left eye and 20/30 in his right eye. The report did not include any indication of further eye problems.

Sometime in 1944, Mr. Natali began experiencing additional vision problems. In September 1944, he was hospitalized for headaches, blurring of vision, and progressive bilateral loss of vision. A report from an ophthalmologic examination shortly thereafter noted that Mr. Natali had experienced residual headaches following a 1939 fall, that he had quit school at age 18 because he could not read well, and that his head had begun hurting again after a 1941 automobile accident that occurred during his period of service. The report noted that Mr. Natali's vision had gradually declined following the automobile acci-

dent and that he had quit driving nine months before the examination because he could not see at night. Mr. Natali was diagnosed with astigmatism mixed, bilateral with diplopia (double vision). A Veterans Administration rating board in November 1944 granted Mr. Natali a service-connected disability rating of 60 percent pursuant to Veterans Regulation No. 1(a), Part I, Paragraph 1(a), for "defective vision, 20/200 bilateral (vision on induction, zero percent)," and stated that his vision was "[a]ggravated by service in the WW II."

In December 1944, Mr. Natali was reexamined in connection with his discharge from service. The examination report indicated a diagnosis of "amblyopia, bilateral," due to "astigmatism, myopic, bilateral, severe." In February 1945, the rating board began reexamining the question whether Mr. Natali's eye condition was service connected. A rating board memorandum indicated that the rating board's action was "deferred pending receipt of additional clinical records hereinafter requested" because "[t]he evidence in file is insufficient to show whether or not veteran's eye condition was aggravated by the accident which occurred November 2, 1941...." A May 1945 rating board memorandum noted that "[t]he veteran alleges an injury to his head in 1939 due to a fall, also that his head was injured in an auto-accident in 1941 and that his vision has gradually become less since the latter accident," but that "[t]he clinical records covering hospitalization from November 2, 1941 until January 28, 1942 on account of injuries sustained in the auto-accident in November 1941 have been carefully checked" and that "[n]o head injury other than a laceration of the scalp is noted in the records." The rating board memorandum concluded that "[a] check of the entire record fails to disclose any disease or injury during service to which an aggravation can be attributed," and that "[t]he Board is inclined to the view that the increased impairment of vision noted at the time of the veteran's discharge from service is due solely to Natural Progress and was not aggravated by military service."

In an August 1945 letter, the rating board informed Mr. Natali that his claim had been "further reviewed based upon report of examination conducted of you at this facility on December 7, 1944 and a review of all the records in your case" and that "it has now been determined that your defective vision is due to structural defects of the eye." The letter explained that those defects were of "congenital or developmental origin," that Mr. Natali was "not shown to have suffered from any disease or injury during service which may be considered as having aggravated that condition," and that "[t]he increase in loss of vision in service is considered to be the result of natural progress and not the result of military service." A contemporaneous rating board memorandum proposed severing service connection for Mr. Natali's disability based on the December 1944 examination.

In a decision dated October 8, 1945, the rating board severed service connection for Mr. Natali's eye problems. The rating board based its ruling on a conclusion that the November 1944 decision contained CUE. The rating board determined that Mr. Natali had "amblyopia expanopsia, bilateral, due to high error refraction and astigmatism, mixed, bilateral" and that his "condition ... is due to a defect in the form and structure of the eye, held to be of a congenital or developmental origin and there is no evidence of any superimposed disability during service which could have caused or aggravated the congenital condition." The rating board noted that its conclusion was based in part on the December 1944 discharge examination.

Since 1945, Mr. Natali has undergone several medical examinations in an effort

to show that the rating determination of October 1945 was incorrect. He has offered evidence of examinations in February 1987, December 1997, and September 1998 to show that he did not have amblyopia.

In October 1998, Mr. Natali filed a claim with a regional office of the Department of Veterans Affairs in which he argued that the 1945 rating board decision contained clear and unmistakable error. The regional office denied Mr. Natali's claim on the ground that the 1945 rating decision was "shown to have been proper based on the evidence of record available at that time and the rules in effect at that time."

Mr. Natali appealed the regional office decision to the Board of Veterans' Appeals, which upheld the regional office's determination that the 1945 severance decision did not contain CUE. The Board found that the November 1944 medical evidence showed that Mr. Natali suffered from amblyopia expanopsia, bilateral, due to a high error of refraction, that the condition had existed all of Mr. Natali's life, and that it was not aggravated during his military service. The Board also found that the December 1944 medical examination showed that Mr. Natali "suffered from sever[e] astigmatism, myopic, with bilateral amblyopia due to this condition." The Board noted that the 1945 rating board had before it evidence that Mr. Natali had injured his head in 1939; that the head injury had contributed to his automobile accident in 1941; and that no clinical records from November 1941 to January 1942 noted any head injury other than a laceration of the scalp. The Board concluded that based on that evidence, the 1945 rating board found that Mr. Natali's eye condition was attributable to a congenital or developmental defect and that the increased impairment he experienced was due to the natural progression of that disorder, rather than aggravation during military service.

The Board then determined that although Mr. Natali had "submitted extensive medical evidence to support his conclusion that the rating determination of October 1945 was incorrect," the evidence obtained after the 1945 decision could not be used to show that the 1945 decision contained CUE. In concluding that the 1945 rating board did not commit CUE, the Board explained that "[t]he [December 1944] discharge evaluation performed by the service medical board clearly indicates that [Mr. Natali's] condition existed prior to service and was not aggravated in service."

Mr. Natali appealed the Board's decision to the Veterans Court. He argued that it was clear and unmistakable error for the 1945 rating board to consider evidence that was not before the 1944 rating board in determining that the 1944 rating decision contained CUE. Mr. Natali also argued that the 1945 rating board committed CUE by not applying the presumption that his eye condition did not exist when he enrolled in the Army and not applying the presumption that any condition he may have had when he entered the military was aggravated by service.

The Veterans Court affirmed the Board's decision. *Natali v. Principi,* No. 01–515 (Vet.App. June 17, 2003). The court declined to find CUE based on the fact that the 1945 rating board had considered the December 1944 evaluation. The court explained that "[a]lthough revisions based on CUE clearly were limited to evidence that had been before the [rating board] at the time of the previous decision, new-and-material-evidence and severance decisions clearly were not so limited." Accordingly, the court concluded that even if the 1945 rating board should not have considered the December 1944 evaluation as part of a CUE determination, the error

was not outcome determinative in light of all the evidence that Mr. Natali's eye condition was not service connected.

## II

■ On appeal to this court, Mr. Natali argues that the 1945 rating board committed CUE by failing to apply certain presumptions in favor of Mr. Natali. At the time of the rating board's decision, Veterans' Regulation No. 1(a), Part I, paragraphs I(b) and (d), provided:

(b) ... every person employed in the active military or naval service shall be taken to have been in sound condition when examined, accepted, and enrolled for service except as to defects, infirmities, or disorders noted at time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed prior to acceptance and enrollment and was not aggravated by such active military or naval service.

. . . .

(d) ... a preexisting injury or disease will be considered to have been aggravated by active military service as provided for therein where there is an increase in disability during active service unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

38 U.S.C. § 724, notes (1940 & Supp. V 1941–1946).[1] Mr. Natali argues that Veterans' Regulation No. 1(a) set forth two presumptions that the 1945 rating board was required to rebut before severing his service connection: (1) the presumption that his eye condition did not exist before he enrolled in the Army; and (2) the presumption that, if his eye condition existed prior to his enrollment, any worsening of that condition was due to his military service.

We recently held in *Wagner v. Principi*, 370 F.3d 1089, 1097 (Fed.Cir.2004), that the presumption of soundness embodied in the regulation at issue here requires the government to show, by clear and unmistakable evidence, that the veteran's disability existed prior to service and that the pre-existing disability was not aggravated during service. *See also Akins v. Derwinski*, 1 Vet.App. 228, 231–32 (1991) (under Veterans' Regulation No. 1(a), Part I, paragraph (b), "[f]irst, the Secretary must prove by clear and unmistakable evidence that [the condition] existed prior to appellant's military induction. Second, if the Secretary can demonstrate that [the condition] existed prior to service, he must also prove by clear and unmistakable evidence that the [condition] was not aggravated in service."). As provided by Veterans' Regulation No. 1(a), Part I, paragraph (d), the government can rebut the presumption of in-service aggravation if it can show that there was no increase in disability during service or that any increase in disability was due to the natural progress of the preexisting condition. *Wagner*, 370 F.3d at 1096.

---

1. The regulations on which Mr. Natali relies were later enacted, without material change, as statutes, 38 U.S.C. §§ 1111, 1153, which read as follows:

§ 1111. Presumption of sound condition
For the purposes of section 1110 of this title, every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmis-

takable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.

§ 1153. Aggravation
A preexisting injury or disease will be considered to have been aggravated by active military, naval, or air service, where there is an increase in disability during such service, unless there is a specific finding that the increase in disability is due to the natural progress of the disease.

Mr. Natali contends that the 1945 rating decision failed to rebut the presumptions of sound condition and aggravation. According to Mr. Natali, the rating board's decision cannot be upheld because the rating board failed to make specific findings that Mr. Natali's condition existed before he enrolled in the service and that the increase in the degree of Mr. Natali's disability was due to the natural progress of the disease. In fact, however, the rating board found that Mr. Natali's eye condition was "clearly shown by the service records and the examination conducted by the Veterans Administration subsequent to discharge to be of congenital or developmental origin," that it was "due to a defect in the form and structure of the eye, held to be of a congenital or developmental origin," and that there was "no evidence of any superimposed disability during service which could have caused or aggravated the congenital condition." Although those findings were not phrased in the language of the regulation, we interpret them to be fully equivalent to factual findings that Mr. Natali's disability both preexisted his military service and was not aggravated by that service. Moreover, Mr. Natali's contention that the 1945 rating board did not make the requisite finding that his eye condition was the result of the natural progress of the condition rather than aggravation during his military service is unconvincing in light of the statement in the rating board's August 1945 letter to Mr. Natali stating that "[t]he increase in loss of vision in service is considered to be the result of natural progress and not the result of military service." Finally, although the rating board did not expressly state that it had made its findings based on "clear and unmistakable evidence," the board's statement that the evidence of preexisting condition was "clearly shown" and the board's statement that there was

"no evidence of any superimposed disability during service which could have caused or aggravated the congenital condition" demonstrates that the rating board understood that its findings on those issues needed to satisfy a high standard of proof.

Contrary to Mr. Natali's contention, the fact that the rating board did not specifically advert to the presumptions of soundness and aggravation, and did not specifically recite the applicable standard of proof for rebutting those presumptions, does not require that we hold the rating board's decision to constitute clear and unmistakable error as a matter of law. Such recitations have not been required for rating decisions that predated the Veterans' Benefits Amendments of 1989, Pub.L. No. 101–237, 103 Stat.2062 (1988), which added the statutory provision mandating that decisions denying benefits include a statement of the reasons for the decision. *Id.* § 115(a), currently codified at 38 U.S.C. § 5104(b). In *Pierce v. Principi,* 240 F.3d 1348, 1355–56 (Fed.Cir.2001), for example, we recognized that in 1945 the rating board was not required to set forth in detail the factual bases for its decisions, and that in the absence of evidence to the contrary, the rating board is presumed to have made the requisite findings. The court in *Pierce* explained that:

> In view of (i) the presumption of validity that attaches to final RO decisions, (ii) the fact that, in 1945, an RO was not required to set forth its findings of fact in its decision, and (iii) the court's determination that the requisite finding on the "feasible and advised" requirement was consistent with the evidence of record, the court correctly presumed that the RO made the required finding.

*Id.* at 1356.[2]

The Board of Veterans' Appeals found that the 1945 rating decision was consis-

**2.** We do not decide whether the failure to

discuss the presumptions in a rating decision

tent with the evidence of record at the time, noting that "[t]he discharge evaluation performed by the service medical board clearly indicates that this condition existed prior to service and was not aggravated in service." The Veterans Court agreed, finding that the medical evidence before the 1945 rating board supported the rating decision. In light of the presumption of validity that applies to the rating board's decision and the decision of the Board and the Veterans Court that the rating board's findings were consistent with the evidence of record, we hold that the Veterans Court properly declined to hold that the 1945 rating board committed CUE by failing to discuss the presumptions of soundness and aggravation in its written decision.

## III

■ Mr. Natali also argues that the 1945 rating board erred when it ruled that the November 1944 rating board decision contained CUE, because the 1945 rating board considered evidence that was not before the 1944 rating board. In particular, Mr. Natali argues that it was improper for the 1945 rating board to consider the December 1944 medical evaluation in determining that the November 1944 decision contained CUE.

The regulations in effect at the time provided:

(a) No rating board will reverse or amend, except upon new and material evidence, a decision rendered by the same or any other rating board, or by any appellate authority, except where such reversal or amendment is clearly warranted by a change in law or by a specific change in interpretation thereof specifically provided for in a Veterans' Administration issue:

Provided, That a rating board may reverse or amend a decision by the same or any other rating board where such reversal or amendment is obviously warranted by a clear and unmistakable error shown by the evidence in file at the time the prior decision was rendered ...

Provided, further, That where the severance of service connection is considered warranted on the facts of record the case file ... will be forwarded without rating to the director of the service concerned in central office, for review, accompanied by a full and clear statement of the underlying reasons and facts.

38 C.F.R. § 2.1009(a) (1945).

The regulation provided two alternative ways for a rating board to modify a rating decision (including severing service connection). First, the board could modify the rating decision after considering "new and material evidence." Second, the board could modify the rating decision upon finding CUE based on "the evidence in file at the time the prior decision was rendered."[3]

made after the enactment of the Veterans' Benefits Amendments of 1989 would mandate a finding of CUE.

**3.** The Veterans Court concluded that the regulation provided the rating board with a third procedure for modifying a rating decision when the modification involved severing service connection. The court relied on the language in the regulation providing that "where the severance of service connection is considered warranted on the facts of record the case file ... will be forwarded without rating to the director of the service concerned in central office, for review, accompanied by a full

and clear statement of the underlying reasons and facts." The court concluded that "[a]lthough revisions based on CUE clearly were limited to evidence that had been before the [rating board] at the time of the previous decision, new-and-material-evidence and severance decisions clearly were not so limited."

We do not agree with the Veterans Court that the quoted clause provided an independent, third procedure for severing service connection. Instead, we read the quoted language to refer to requirements that had to be met when either of the first two procedures was employed to sever service connection.

The 1945 rating board stated that the 1944 rating decision was "held to involve clear and unmistakable error." Therefore, the 1945 rating board should not have relied on the December 1944 evaluation, as that evaluation was not part of the record before the rating board when it made the November 1944 rating decision.

Although the 1945 rating board improperly relied on the December 1944 medical evaluation in severing service connection for Mr. Natali's eye condition, that error does not constitute CUE unless it would have been outcome determinative. *Cook v. Principi,* 318 F.3d 1334, 1344 (Fed.Cir. 2002) (en banc); *accord Bustos v. West,* 179 F.3d 1378, 1381 (Fed.Cir.1999). That is, the error must have been one "that would manifestly change the outcome of a prior decision." *Bustos,* 179 F.3d at 1381.

The Veterans Court held that, even if it was error for the 1945 rating board to consider the December 1944 medical evaluation in making its CUE determination, the error would not have made a difference in the rating board's decision. Although Mr. Natali challenges the court's conclusion in that regard, we discern no basis to overturn the court's ruling, particularly in view of the fact that the December 1944 medical evaluation did not reflect a new diagnosis of Mr. Natali's eye condition but simply confirmed the earlier diagnosis. Alternatively, if the 1945 rating board had based its severance decision on

new and material evidence rather than on CUE, it would have been entirely appropriate for the board to consider new evidence such as the December 1944 medical evaluation. Thus, the selection of new and material evidence as the vehicle for correcting the rating error would have had no apparent effect on the rating board's ultimate decision of the severance issue.

The only difference between a decision based on CUE and a decision based on new and material evidence would be the effective date of the severance decision. A decision based on CUE would be effective as of the date of the earlier ruling that is being overturned, while a decision based on new and material evidence would be effective as of the date of the new decision. The effective date of the 1945 decision would have no impact on this case, however, as there is no evidence indicating (and Mr. Natali does not argue) that Mr. Natali has lost any benefits attributable to the period between the 1944 rating decision and the 1945 severance decision. Accordingly, the severance decision of the 1945 rating board would have been the same if the board had invoked new and material evidence rather than CUE. For that reason, we agree with the Veterans Court that any error in the rating board's decision that the November 1944 rating contained CUE was not outcome determinative. We therefore uphold the decision of the Veterans Court that Mr. Natali has not

Thus, in our view, the regulation provided that a rating board could modify a rating decision or sever service connection if either (1) the rating board concluded that new and material evidence required that result, or (2) the rating board concluded, based on the evidence of record at the time of the original rating decision, that the original decision constituted clear and unmistakable error. The government agrees with that characterization of the regulation.

Our disagreement with the Veterans Court on this issue does not affect the outcome of this case, however, because—as we discuss below—the decision of the rating board would not have been affected if it had used new and material evidence as the basis for its severance ruling, as the regulation clearly permitted it to do.

established grounds for overturning the 1945 rating board decision.

*AFFIRMED.*