# United States Court of Appeals for the Federal Circuit

04-7067

LEMOYNE HAUCK,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

Sandra E. Booth, of Columbus, Ohio, argued for claimant-appellant.

Joshua E. Gardner, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. On the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Bryant G. Snee, Assistant Director, and Thomas D. Dinackus, Attorney. Of counsel on the brief were Richard J. Hipolit, Deputy Assistant General Counsel, and Ethan G. Kalett, Attorney, United States Department of Veterans Affairs, of Washington, DC. Of counsel was Matthew P. Reed, Attorney.

Appealed from: United States Court of Appeals for Veterans Claims

Senior Judge Kenneth B. Kramer

# United States Court of Appeals for the Federal Circuit

04-7067

LEMOYNE HAUCK,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED:  March 2, 2005

_____

Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge, and PROST, Circuit Judge.

ARCHER, Senior Circuit Judge.

LeMoyne Hauck ("Hauck") appeals the Court of Appeals for Veterans Claims' ("Veterans Court") affirmance of the Board of Veterans' Appeals' ("Board") determination that there was no clear and unmistakable error ("CUE") in a 1971 Department of Veterans Affairs Regional Office ("VARO") decision that denied his claim for service connection for loss of vision.  Because we discern no error in the Veterans Court's affirmance of the Board decision upholding that 1971 VARO decision, we affirm the Veterans Court's judgment.

Background

Hauck served on active duty from October 1942 to May 1943. The report of his October 19, 1942 examination upon induction to service noted a previously detached retina and an uncorrectable vision problem, both involving his left eye. He was medically discharged in 1943, due to "valvular heart disease, mitral insufficiency due to rheumatic fever, incurred prior to service in 1939 and not aggravated during active service." In June 1967, the VARO awarded Hauck service connection for rheumatic heart disease and denied service connection for blindness in both eyes found to be unrelated to his military service. In March 1971, the VARO determined that newly submitted evidence did not establish service connection for loss of vision and continued denial of veterans benefits based upon that condition. Hauck later asked the VARO to revise this decision. The VARO denied this request in a rating decision in March 2001. Hauck appealed this decision to the Board, alleging multiple instances of CUE.

The Board rejected these allegations in a decision dated April 23, 2002, concluding that the 1971 VARO decision was not clearly and unmistakably erroneous. Hauck appealed some of his CUE claims to the Veterans Court, which held that the Board's decision contained an adequate statement of reasons or bases for its findings and was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

Hauck now appeals the Veterans Court's decision. The claims on appeal concern the interpretation of a statute and several regulations. With regard to the statute and one regulation, two pieces of medical evidence are relevant: a 1968 letter from Dr. O'Connor, an ophthalmologist, and a 1969 letter from Dr. Brundige, a non-

specialist. Dr. Brundige stated that Hauck's sudden vision loss was "thought to be due to a central retinal artery embolism, probably from old rheumatic carditis." Dr. O'Connor, however, opined that he "ha[d] no idea whether the occlusion [the source of Hauck's blindness] was caused by an embolism, thrombosis or some other cause, but [that] an embolism of this artery is a relatively rare cause of obstruction as compared to other causes."

We have jurisdiction pursuant to 38 U.S.C. § 7292(c).

## Discussion

Hauck asserts that the Veterans Court misinterpreted 38 U.S.C. § 5109(A) (2002) and 38 C.F.R. § 3.105(a) (2002) when the court determined that, in considering whether the 1971 VARO decision contained CUE, it could consider conclusions which had not been made by the agency in 1971. Hauck also contends that the Veterans Court misconstrued 38 C.F.R. § 3.102 (1971) because it "weighed" evidence when, according to Hauck, the evidence in support of the claim was not impeached or contradicted. Finally, Hauck argues that 38 C.F.R. § 3.103 (1971) should be construed to require the agency to notify the veteran of the reasons for the VARO decision.

Interpretations of the law and regulations relied upon by the Veterans Court can be set aside only if we find them to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations or in violation of a statutory right; or (4) without observance of procedure required by law." Maxson v. Gober, 230 F.3d 1330, 1332 (Fed. Cir. 2000); 38 U.S.C. § 7292(d)(1).

04-7067                                    3

Hauck's argument with respect to 38 U.S.C. § 5109(A) and 38 C.F.R. § 3.105(a) is that the Board generated conclusions to support the 1971 ratings decision that were previously not of record.[1] Before the 1990 effective date of what is now 38 U.S.C. § 5104(b), VARO was not required to set forth in detail the factual bases for its decisions. Recognizing this, we have explained that in the absence of evidence to the contrary, the rating board is presumed to have made the requisite findings. See Natali v. Principi, 375 F.3d 1375, 1380-81 (Fed. Cir. 2004); Pierce v. Principi, 240 F.3d at 1355-56. When faced with a request to determine whether CUE exists in a case, the Board must determine whether evidence establishes the error. In making this determination with regard to a pre-1990 VARO decision, the Board must necessarily examine the evidence of record; assume that the VARO was aware of and duly considered extant law; and form a conclusion as to whether the VARO decision was supportable in light of that evidence and law. Id. In doing so, the Board can, indeed it must, analyze the evidence that was before the VARO at the time of the rating decision. As a result, in determining whether the VARO's decision is supported by the evidence, the Board may refer to the VARO's analysis or the facts it reasonably relied on without creating a new reason for the earlier VARO decision. See id. Such a procedure does not represent a new reason for the earlier rating decision; rather, it is a procedure

---

[1] 38 U.S.C. § 5109(A) states "[a] decision by the Secretary under this chapter is subject to revision on the grounds of clear and unmistakable error. If evidence establishes the error, the prior decision shall be reversed or revised." 38 U.S.C. § 5109(A). We have previously determined that the term "evidence" as it occurs in § 5109(A) is limited to evidence that was of record at the time the challenged VARO decision was made. See Pierce v. Principi, 240 F.3d 1348, 1356 (Fed. Cir. 2001). Section 3.105(a) states, in pertinent part: "[p]revious determinations which are final and binding, including decisions of service connection . . . will be accepted as correct in the absence of clear and unmistakable error." 38 C.F.R. § 150(a).

necessary to determine whether the earlier decision has evidentiary support. In the present case, the Board did not articulate new grounds for the 1971 VARO decision but simply determined whether the ratings decision was consistent with the evidence of record in 1971. As such, in affirming the Board's finding of no CUE, the Veterans Court did not err in its interpretation of 38 U.S.C. § 5109(A) or 38 C.F.R. § 3.105(a).

Hauck's second contention is that the Veterans Court misinterpreted 38 C.F.R. § 3.102.[2] Hauck asserts that the correct interpretation of § 3.102 bars the agency from "weighing" the evidence where the evidence in support of the claim is not impeached or contradicted.[3] Hauck fails, however, to acknowledge the factual predicate for the application of § 3.102. This section applies "[w]hen, after careful consideration of all procurable and assembled data, <u>a reasonable doubt</u> arises

---

[2]   Section 3.102 sets forth the reasonable doubt doctrine and states:

It is the defined and consistently applied policy of the Department of Veterans Affairs to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility. It is not a means of reconciling actual conflict or a contradiction in the evidence. Mere suspicion or doubt as to the truth of any statements submitted, as distinguished from impeachment or contradiction by evidence or known facts, is not justifiable basis for denying the application of the reasonable doubt doctrine if the entire, complete record otherwise warrants invoking this doctrine. The reasonable doubt doctrine is also applicable even in the absence of official records, particularly if the basic incident allegedly arose under combat, or similarly strenuous conditions, and is consistent with the probable results of such known hardships.

38 C.F.R. § 3.102.
[3]   We make no statement as to the accuracy of such a position.

regarding service origin, the degree of disability, or any other point." 38 C.F.R. § 3.102 (emphasis added). Here, neither the VARO, the Board, nor the Veterans Court identified any reasonable doubt.[4] Thus, neither the Board nor the Veterans Court found a factual predicate for the application of § 3.102. As such, we cannot say that the failure to apply § 3.102 in this case reflected a misinterpretation of the section by the Veterans Court.

Finally, Hauck invites us to construe 38 C.F.R. § 3.103 (1971) as requiring the VA to notify a veteran of the reasons for a VARO decision on a claim submitted by the veteran. The language of the regulation requires that "[t]he claimant will be notified of any decision authorizing the payment of benefit or disallowance of a claim. Notice will include the reason for the decision . . . ." 38 C.F.R. § 3.103. It is puzzling that Hauck contends that this regulation was not followed or was somehow misinterpreted by the VARO, the Board, or the Veterans Court in this case. Here the VARO denied Hauck's claim because an "etiological relationship between rheumatic heart disease [and] right eye blindness is not established." The VARO communicated this decision to Hauck in an April 2, 1971 letter stating a "[c]ausal relationship between rheumatic heart disease and right eye blindness is not established." Such a statement clearly meets the

---

[4] Indeed, the only statement by an eye specialist, Dr. O'Connor, was that an embolism, the only suggested cause of Hauck's vision loss that could have related to Hauck's military service (as a result of service-connected rheumatic carditis), was a "relatively rare" cause of blindness. Additionally, the Veterans Court found that the March 1969 letter from Dr. Brundige (who was not an eye specialist) reflected only a recitation of Hauck's vision history, as provided by Hauck, and what may have only been Dr. Brundige's interpretation of Dr. O'Connor's letter (which interpretation the Board concluded was questionable in light of Dr. O'Connor's uncertainty as to the cause of Hauck's blindness).

requirement of 38 C.F.R. § 3.103. Accordingly, we find no error in the Veterans Court's interpretation of § 3.103.

## Conclusion

Because we conclude that the Veterans Court's decision affirming the Board's finding of no CUE in the VARO's 1971 decision was correct, the judgment of the Veterans Court is

## AFFIRMED.