LANCE, Judge:
The appellant, Ronald L. Evans, appeals through counsel a June 21, 2011, decision of the Board of Veterans’ Appeals (Board) that found that an April 1988 rating deci *182 sion, which granted the appellant service connection for post-traumatic stress disorder (PTSD) and assigned a 30% disability rating, did not contain clear and unmistakable error (CUE) for “failing to consider and grant entitlement to a total disability rating based on individual unemployability” (TDIU). Record (R.) at 3. This appeal is timely, and the Court has jurisdiction over the Case pursuant to 38 U.S.C. §§ 7252(a) and 7266. The parties each filed briefs, and the appellant filed a reply brief. Thereafter, a three-judge panel of the Court heard oral argument in the case on January 28,2014. On July 21,2014, the case was submitted to the en banc Court pursuant to section VII(b)(2)(A) of the Court’s Internal Operating Procedures, and the en banc Court heard oral argument on August 13, 2014. As the Board’s determination that the April 1988 rating decision did not contain CUE is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, and because the Board provided an adequate statement of reasons or bases for its decision, the Court will affirm the June 21, 2011, Board decision.
I. FACTS
The appellant served in the U.S. Marine Corps from November 1973 to October' 1975. R. at 1285. '
Following service, on July 23, 1987, he filed a VA form 21-526, Veteran’s Application for Compensation or Pension, seeking disability compensation benefits for PTSD. R. at 1133-36. In his application, he noted that he had worked as a foreman at “Day Lay Farms” in Raymond, Ohio, for one month when he “was let go since he was entering [the] hospital.” R. at 1135. A September 1987 VA medical center (VAMC) discharge summary indicated that he had been admitted to the VAMC on July 27, 1987, for PTSD treatment and concluded
It is felt that the [appellant] is unemployable at this time in light of his continuing need for intensive out-patient treatment with the possibility of referral back for in-patient treatment should his out-patient therapist deem it appropriate. His employment status will be reassessed on a continuing basis as an out-patient and may be upgraded when felt appropriate.
R. at 1165.
In a November 1987 VA compensation and pension (C & P) examination, Paul Kirch, M.D., found the appellant coherent and logical and noted that his emotional reactions were appropriate. R. at 1146-47. Dr. Kirch also found the appellant competent and that his mental content revealed no delusions, hallucinations, or abnormal thought processes. Id. On January 12, 1988, the appellant underwent two VA C & P examinations. R. at 1128-29, 1130-31. In the first, Liberato Basobas, M.D., found the appellant anxious, tense, suspicious, guarded, evasive, and somewhat manipulative. R. at 1128-29. Dr. Basobas also found that the appellant’s judgment and insight were fair, he was competent, and he denied hallucinations or delusions. Id. Dr. Basobas indicated the appellant’s ability to attend group therapy for PTSD. Id. In the second January 1988 C & P examination, Souhair Garas, M.D., also stated that the appellant was able to attend group therapy for PTSD. R. at 1130-31.
In' an April 1988 rating decision, the Cleveland, Ohio, VA regional office (RO) granted the appellant (1) benefits for PTSD, assigning a 30% disability rating effective July 23, 1987; (2) a temporary 100% disability rating, effective July 27, 1987, the date of his VAMC admission; and (3) a 30% disability rating, effective *183 October 1, 1987, the date following his discharge from the VAMC. R. at 1111-13. Also in the April 1988 rating decision, the RO marked “yes” in box 17, entitled “EMPLOYABLE (Compensation only).” R. at 1111. The appellant did not appeal this decision, and it became final.
About 10 years later, in a November 1998 rating decision, the RO granted the appellant a 70% disability rating for PTSD, effective January 23, 1995.[2] R. at 433 (July 2002 rating decision referring to the November 1998 rating decision). On December 4, 1998, he filed a VA form 21-8940, Veteran’s Application for Increased Compensation Based on Unemployability. R. at 853-54. The RO granted him entitlement to TDIU, effective December 4, 1998, by a rating decision issued in December 1999. R. at 798-802. Thereafter, the RO increased the appellant’s schedular disability rating for PTSD to 100%, effective January 23, 1995, and found CUE in the December 1999 rating decision for failing to grant TDIU effective January 23, 1995. R. at 430-37. Ultimately, in a December 2003 decision, the Board denied an effective date earlier than January 23, 1995, for the appellant’s TDIU award. R. at 389-97.
On appeal, this Court issued an order in September 2006 setting aside the Board’s December 2003 decision and dismissing the appeal, holding that the appellant’s earlier effective date request, based on a failure of the April 1988 RO to adjudicate an informal claim for TDIU, had to be made in the context of a request for revision of the April 1988 rating decision based on CUE. Evans v. Nicholson, No. 04-744, 2006 WL 2805051 (Vet.App. Sept. 26, 2006). In accordance with the Court’s order, the appellant filed a motion to revise file April 1988 rating decision, arguing-that the RO committed CUE in failing to construe his July 23, 1987, PTSD claim to include a request for entitlement to TDIU. R. at 268-71. In August 2009, the RO determined that the appellant’s 1987 claim did not include a request for TDIU and alternatively determined that TDIU remained denied because the appellant had not demonstrated CUE in that denial. R. at 160-69. The appellant perfected an appeal to the Board, R. at 26 (Apr. 2010 VA Form 9), 33-54 (Apr. 2010 Statement of the Case), 80-81 (Aug. 2009 Notice of Disagreement).
In the June 2011 decision on appeal, the Board determined that the April 1988 gating decision did not contain CUE. R. at 2-16. In doing so, it determined that the evidence before the RO in April 1988 reasonably raised the issue of entitlement to TDIU and further determined that the April 1988 decision implicitly denied TDIU. R. at 11-13. The Board further found that the appellant had reasonable notice that entitlement to TDIU had been denied, as “a reasonable person would have recognized that a 100% rating and a TDIU were effectively the same benefits,” and that the reduction of the 100% rating coupled with a substantial decrease in monthly benefits represented a denial of TDIU. R. at 12. Additionally, the Board found “that the RO implicitly determined that the [appellant] was not unemployable due to his PTSD, because the case was not submitted for extra-schedular consideration by VA’s Director, Compensation and Pension Service.” R. at 13. Hence the Board rejected the appellant’s argument that the April 1988 rating decision was the product of CUE for failing to adjudicate the issue of TDIU. R. at 13.
*184 As to the merits of TDIU, the Board found that a CUE challenge would nonetheless fail because “the evidence of record in April 1988 did not show' that it was ‘absolutely clear’ or ‘undebatable’ that the [appellant] was unemployable due to his PTSD.” R. at 13-14. The Board explained that, while “the evidence of record in April 1988 contained medical evidence indicating that the [appellant] was unemployable, the record also contained other medical evidence from which the RO could have concluded that he was not unemployable,” referencing the November 1987 and January 1988 C & P opinions. R. at 14. This appeal followed.
II. THE PARTIES’ ARGUMENTS
The appellant first argues that the Board erred by holding that an implicit denial is a complete defense to a CUE request. Appellant’s Brief (Br.) at 13-15; Reply Br. at 2-3. The Secretary responds that the Board did not conclude that an implicitly denied claim necessarily bars all CUE challenges. Secretary’s Br. at 7-9. Second,. the appellant contends that the Board erred when it determined that a motion alleging CUE must “show entitlement to reversal and a grant of benefits as a condition precedent to CUE relief based on an unadjudicated claim theory.” Appellant’s Br. at 15-23; Reply Br. at 3-13. Specifically, he argues that 38 C.F.R. § 4.16(b) was misapplied and that the Board should have found that the RO clearly and unmistakably should have referred his case to the C & P Director and that • such an outcome here would have resulted in a “manifest change in outcome,” even though referral itself does not result in a grant of benefits. Appellant’s Br. at 18-23. The Secretary responds that a Board finding that a claim was adjudicated and implicitly denied permits a challenge based on CUE, but that the appellant must still provide persuasive reasons as to why the result would have been manifestly different but for the alleged error. Secretary’s Br. at 9-13. He further argues that the appellant’s assertion that he need not demonstrate that the actual outcome would have been manifestly different, i.e., a resultant grant of benefits, has no support in the Court’s CUE jurisprudence. Id.
Finally, the appellant argues that, if the Corn-t resolves the above two issues in favor of the Secretary, then the Board’s denial of revision is arbitrary, capricious, and an abuse of discretion or otherwise not in accordance with the law as there was no basis in the record to deny TDIU in April 1988. Appellant’s Br. at 23-29; Reply Br. at 13-15. The Secretary responds that this argument amounts to a mere disagreement with how the RO weighed the evidence in April 1988, which is legally insufficient to support a finding of CUE. Secretary’s Br. at 13-16.
III. ANALYSIS

A. Implicit Denial as a Bar to CUE

The Court is unpersuaded by the appellant’s argument “that the Board erred as a matter of law by interpreting an implicit denial to constitute a bar to CUE.” Appellant’s Br. at 13. In the decision on appeal, the Board concluded “that the April 1988 rating decision properly considered and implicitly denied the [appellant’s [request] for a TDIU. Therefore, the [appellant’s [motion for] CUE for failing to adjudicate the claim fails as a matter of law,” R. at 13. Thus, contrary to the appellant’s argument, the Board did not find that an implicit denial constitutes a bar to CUE. See id. Rather, the Board simply determined that the appellant’s argument that the RO committed CUE in failing to adjudicate the issue of TDIU must fail as TDIU was indeed considered and implicit *185 ly denied in the April 1988 rating decision.[3] Id. The Board proceeded to address whether the assertion of CUE in the denial of TDIU had merit, and it determined that the appellant had not demonstrated CUE in that denial. R. at 14 (“The evidence of record in April 1988 did not show that it was ‘absolutely clear’ or ‘undebatable’ that the [appellant] was unemployable due to his PTSD.”). Once the Board determined that the appellant’s claim was implicitly denied, however, his assertion that the RO committed CUE in failing to adjudicate TDIU failed as a matter of law. See Hilkert v. West, 12 Vet.App. 145, 151 (1999) (en banc) (“An appellant bears the burden of persuasion on appeals to this Court.”), aff'd per curiam, 232 F.3d 908 (Fed.Cir.2000) (table).

B. CUE in the April 1988 Rating Decision

Mr. Evans’s next argument is also unpersuasive. Mr. Evans asserts that the Board’s determination that the April 1988 rating decision was not the product of CUE was arbitrary, capricious, or otherwise not in accordance with the law.
A CUE motion is a collateral attack on a final RO or Board decision. Disabled Am. Veterans v. Gober, 234 F.3d 682, 696-98 (Fed.Cir.2000). Clear and unmistakable error is established when the following conditions are met: First, either (1) the correct facts in the record were not before the adjudicator, or (2) the statutoiy or regulatory provisions in existence at the time were incorrectly applied. Damrel v. Brown, 6 Vet.App. 242, 245 (1994). Second, the alleged error must be “undebatable,” not merely “a disagreement as to how the facts were weighed or evaluated.” Russell v. Principi, 3 Vet.App. 310, 313-14 (1992) (en banc); see also Hillyard v. Shinseki, 24 Vet.App. 343, 349 (2011). Finally, the commission of the alleged error must have “manifestly changed the outcome” of the decision being attacked on the basis of CUE at the time that decision was rendered. Russell, 3 Vet.App. at 313-14; see Bustos v. West, 179 F.3d 1378, 1380 (Fed.Cir.1999) (expressly adopting “manifestly changed the outcome” language in Russell); see also King v. Shinseki, 26 Vet.App. 433, 442 (2014) (“Whether it is reasonable to conclude that the outcome would have been different is not the standard that must be met for a motion alleging [CUE] to succeed. The governing law requires that the error be ‘undebatable’ and that the commission of the alleged error must have ‘manifestly changed the outcome’ of the decision.” (citing Russell, 3 Vet.App. at 313-14)).
“CUE is a very specific and rare kind of ‘error’ ,.. of fact or law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error.” Fugo v. Brown, 6 Vet.App. 40, 43 (1993). “[I]f it is not absolutely *186 clear that a different result would have ensued,” based upon the facts and law that were understood at the time of the decision, then any error that may have occurred in a final Board or RO decision is not clear and unmistakable. Id. at 44. The Court cannot review a CUE motion under the same standard by which it reviews matters on direct appeal. “As a result, there will be times when the Court arrives at a different conclusion when reviewing a motion to reverse or revise a prior, final decision than it would have had the matter been reviewed under the standards applicable on direct appeal.” King, 26 Vet.App. at 442. The Court’s review of the Board’s determination on the existence of CUE is limited to whether that conclusion was “arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law” or unsupported by adequate reasons or bases. 38 U.S.C. § 7261(a)(3); Hillyard, 24 Vet.App. at 349; Russell, 3 Vet.App. at 315.
In finding that the April 1988 RO decision implicitly denied TDIU and that the appellant had reasonable notice of the denial, the Board reasoned that a reasonable person would have recognized that a 100% disability rating and TDIU were effectively the same benefits and that the reduction of the disability rating to 30%, coupled with a substantial decrease in monthly benefits, represented a denial of TDIU. R. at 12; see Locklear v. Shinseki, 24 Vet.App. 311, 316 (2011) (“The award of a disability rating less than 100% generally provides notice as to how the Secretary has rated a claimant’s condition and serves as a final decision, if unappealed, with regard to entitlement to any higher disability rating associated with the underlying disability, including TDIU.” (citing Ingram, 21 Vet.App. at 248)); Ingram, 21 Vet.App. at 243 (holding that “a reasonably raised claim remains pending until there is either a recognition of the substance of the claim in an RO decision from which a claimant could deduce that the claim was adjudicated or an explicit adjudication of a subsequent ‘claim’ for the same disability”); see also Adams v. Shinseki, 568 F.3d 956, 965 (Fed.Cir.2009) (“[Tjhe implicit denial rule is, at bottom, a notice provision.”). As noted above, the appellant fails to demonstrate any error with regard to the Board’s finding as to implicit denial. See Hilkert, 12 Vet.App. at 151.
The gravamen of the appellant’s argument on appeal is that the Board erred because it should have found that the RO clearly and unmistakably should have referred his case to the C & P Director on the issue of entitlement to TDIU pursuant, to 38 C.F.R. § 4.16(b), and that the referral constitutes a “manifest change in outcome,” even though referral itself does not result in a grant of benefits. Appellant’s Br. at 15-23. However, this argument puts the cart before the horse. For the reasons stated below, the Court is not persuaded that the Board’s determination that the record evidence was not undebatable that the appellant was unemployable due to his PTSD was arbitrary, capricious, an abuse of discretion, or otherwise contrary to the law, or supported by inadequate reasons or bases. Therefore, the Court need not decide today whether referral of a case to the C & P Director for consideration of an extraschedular TDIU pursuant to § 4.16(b) can constitute a “manifestly different outcome” of a prior final decision sufficient to establish CUE in that decision. See Quirin v. Shinseki, 22 Vet.App. 390, 396 (2009) (holding that “the Court will not ordinarily consider additional allegations of error that have been rendered moot by the Court’s opinion or that would require the Court to issue an advisory opinion”).
*187 At the time of the April 1988 rating decision, § 4.16(b) provided that “rating Boards should submit to the [C & P] Director ... for extraschedular consideration all cases of veterans who are unemployable by reason of service connected disabilities ...” 38 C.F.R. § 4.16(b) (1987) (emphasis added). Here, the Board found that “[t]he evidence of record in April 1988 did not show that it was ‘absolutely clear’ or ‘undebatable’ that the [appellant] was unemployable due to his PTSD.” R. at 13-14. The Board acknowledged the September 1987 VAMC discharge summary’s indication that the appellant was unemployable, but it found that “the record also contains other medical evidence from which the RO could have concluded that he was not unemployable.” R. at 14. The Board then cited to the November 1987 and January 1988 C & P opinions, “whose examiners reported clinical findings indicating that the [appellant’s PTSD was less than totally disabling at that time.” Id.
Initially, the Court notes that the appellant reported that he had worked as a foreman at “Day Lay Farms” in Raymond, Ohio, for one month when he “was let go since he was entering [the] hospital,” in connection with his July 1987 PTSD claim. R. at 1135. Further, although the September 1987 VAMC discharge summary indicates that the appellant was unemployable, the discharge summary also indicates that (1) the appellant may return to pre-hospi-tal activities, (2) his employment status would be reassessed and may be upgraded when felt appropriate, and (3) his unem-ployability was based partially on “the possibility of referral back for in-patient treatment,” which did not occur, based on the record at the time. R. at 1165.
Moreover, other evidence supports the Board’s finding that the evidence of record was not undebatable that the appellant was unemployable due to his PTSD. Turning to the discussion by the Board, Dr. Kirch, in the November 1987 C & P opinion, found the appellant coherent and logical and noted that his emotional reactions were appropriate. R. at 1146-47. Dr. Kirch also found the appellant competent and that his mental content revealed no delusions, hallucinations, or abnormal thought processes. Id. In one of the January 1988 C & P opinions, Dr. Basobas found that the appellant’s judgment and insight were fair, he was competent, and he denied hallucinations or delusions. R. at 1128-29. Dr. Basobas noted the appellant’s ability to attend group therapy for PTSD. Id. In the other January 1988 C & P opinion, Dr. Garas also noted the appellant’s ability to attend group therapy for PTSD. R. at 1130-31.
To the extent that our dissenting colleague states that “none of the VA examiners reassessed the veteran’s unemployability or ‘upgraded’ his employment status as directed in the September 1987 VA hospital discharge summary,” post at 24-25, the Court notes that the absence of the words “unemployability” or “unemployable” does not equate to an absence of evidence from which the factfinder can consider, draw inferences, and assign probative value as appropriate. Indeed,, it is the prerogative of the factfinder — here, the April 1988 RO — to interpret the evidence and draw reasonable inferences from it. See e.g., Kahana v. Shinseki, 24 Vet.App. 428, 435 (2011); Gilbert v. Derwinski, 1 Vet.App. 49, 52 (1990). Although our dissenting colleague goes through pains to reweigh the evidence of record, the Court is prohibited from engaging in such an exercise and disagreements with how the evidence was weighed and evaluated at the time of the prior decision cannot constitute CUE. See Hillyard, 24 Vet.App. at 349; Russell, 3 Vet.App. at 313-14. Overall, the appellant’s condition and abilities noted by the November 1987 and January 1988 C & P *188 examiners do not compel a finding that the appellant was unable to secure and follow a substantially gainful occupation. See Fugo, 6 Vet.App. at 43.[4]
Although the appellant relies heavily on the fact that the September 1987 VAMC discharge summary contains medical evidence indicating that he was unemployable, R. at 1165, that alone does not end the inquiry.[5] At the time of the April 1988 RO decision, and still today, a TDIU determination was to be based on a weighing of all the evidence regarding the appellant’s condition. See 38 C.F.R. § 3.303 (1988) (requiring “all pertinent medical and lay evidence” to be considered in rating determinations); see also Geib v. Shinseki 733 F.3d 1350, 1354 (Fed.Cir.2013) (“[Applicable regulations place the responsibility for the ultimate TDIU determination on the VA, not a medical examiner”); Moore v. Nicholson, 21 Vet.App. 211, 218 (2007) (discussing 38 C.F.R. § 4.2 and stating that “[t]he medical examiner provides a disability evaluation and the rating specialist interprets medical reports in order to match the rating with the disability”), rev’d on other grounds sub nom. Moore v. Shinseki 555 F.3d 1369 (Fed.Cir.2009); cf. 38 C.F.R. § 4.130 (1988) (directing that evaluations of the degree of psychiatric disabilities are to be based primarily on “the report and the analysis of the symptomatology and the full consideration of the whole history by the rating agency” and that an examiner’s classification of the degree of disability “is not determinative”). The appellant fails to demonstrate that the RO committed CUE by not adopting the view of unemployability indicated solely in the VAMC discharge summary. See Moore, 555 F.3d at 1373 (“ ‘[I]t is the responsibility of the rating specialist to ... reconcile] the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present.’” (quoting 38 C.F.R. § 4.2)); Hilkert, 12 Vet.App. at 151.
Finally, the Court notes that, at the time of the April 1988 rating decision, the RO was not required to provide a statement of reasons or bases as to its conclusions. See Natali v. Principi 375 F.3d 1375, 1381 (Fed.Cir.2004) (holding that statements of reasons or bases in RO decisions were not required prior to “the Veterans’ Benefits *189 Amendments of 1989, Pub.L. No. 101-237, 103 Stat. 2062 (1988), which added the statutory provision mandating that decisions denying benefits include a statement of the reasons for the decision”); see also Eddy v. Brown, 9 Vet.App. 52, 58 (1996) (holding that “silence in a final RO decision made before February 1990 cannot be taken as showing a failure to consider evidence of record”). Accordingly, to establish CUE based on the failure to consider a particular fact or law, “in a pre-February-1990 RO decision, it must be clear from the face of that decision that a particular fact or law had not been considered in the RO’s adjudication of the case.” Joyce v. Nicholson, 19 Vet.App. 36, 46 (2005). There is no indication on the face of the April 1988 rating decision that the RO did not consider the evidence of record or the application of § 4.16(b), and the Court cannot conclude that it failed to do so on the basis of silence alone. See Natali, 375 F.3d at 1380 (RO’s failure in 1945 to cite to presumption of soundness and aggravation does not mean that those statutes were not correctly applied); Eddy, 9 Vet.App. at 58.
In summary, the Court is not persuaded that the Board’s determination that the evidence of record was not undebatable that the appellant was unemployable due to his PTSD, was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law, or supported by inadequate reasons or bases. See 38 U.S.C. § 7261(a)(3); Hillyard, 24 Vet.App. at 349; Russell, 3 Vet.App. at 315; see also Motor Vehicle Mfrs. Ass’n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (“The scope of the Court’s review under the ‘arbitrary and capricious’ standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a ‘rational connection between the faets found and the choices made.’ ” (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962))). Hence, as the appellant has not shown “undebatably” that referral was warranted here, the Court need not address the issue of whether referral of a case to the C & P Director for consideration of an extraschedular TDIU pursuant to 38 C.F.R. § 4.16(b) can constitute a “manifestly different outcome” of a prior final decision sufficient to establish CUE in that decision. See Quirin, 22 Vet.App. at 396.
IV. CONCLUSION
Upon consideration of the foregoing, the June 21, 2011, Board decision is AFFIRMED.
LANCE, Judge, filed the opinion of the Court.
KASOLD, Chief Judge, filed a concurring opinion.
SCHOELEN, Judge, filed a dissenting opinion in which GREENBERG, Judge, joined.
BARTLEY, Judge, filed a dissenting opinion in which GREENBERG, Judge, joined and SCHOELEN, Judge, joined in part.

. The Court notes that the November 1998 rating decision is not in the record of proceedings.

. Of course, if the Board finds that VA has not adjudicated a pending claim, the Board must direct VA to adjudicate the claim. See Richardson v. Nicholson, 20 Vet.App. 64, 72 (2006) ("If such a reasonably raised claim remains pending, then there is no decision on that claim to revise on the basis of CUE; however, the claim must be adjudicated.”). However, the Court emphasizes that, subsequent to the Court’s decision in Richardson, the Court issued a decision in Ingram v. Nicholson, which held that an appeal of an effective date decision is the proper method to obtain direct review of an assertion as to when a claim was first raised. 21 Vet.App. 232, 254 (2007); but see Richardson, 20 Vet.App. at 72, n. 7 (declining to address "[wjhether or not CUE is the exclusive way to raise such a matter.”). Nevertheless, “[t]he Secretary’s failure to adjudicate a reasonably raised claim can be the basis of the CUE motion as to a final decision of the Secretary where the issue was relevant to a decision actually made.” Ingram, 21 Vet.App. at 254-55.

. The Court notes that the rating schedule before the RO in April 1988 considered the effects of PTSD and employability explicitly. 38 C.F.R. § 4.132, Diagnostic Code (DC) 9411 (1987) (100% schedular disability rating warranted where, inter alia, claimant is "[d]e-monstrably unable to obtain or retain employment”; 30% for "definite industrial impairment”); see Bowyer v. Brown, 7 Vet.App. 549, 553 (1995) (maldng clear that the agency's use "of its own medical judgment provided by the medical member of [a] panel was common practice prior to the [Court’s decision in] Colvin[ v. Derwinski, 1 Vet.App. 171 (1991)]”).

. Indeed, while noting that “[i]t [wa]s felt that the [appellant wa]s unemployable at th[e] time in light of his continuing need for intensive out-patient treatment,” the 1987 hospital discharge summary also stated that the appellant "may return to pre-hospital activities,” which included employment. R. at 1165; see R. at 1135 (Jul. 1987 VA form 21-526, Veteran’s Application for Compensation or Pension, noting the appellant had worked as a foreman at "Day Lay Farms” in Raymond, Ohio, for one month when he "was let go since he was entering [the] hospital”). Again, despite our dissenting colleague’s mighty efforts to reweigh the evidence of record, it is simply not undebatable on the issue of unem-ployability. See Russell, 3 Vet.App. at 313 (holding that a claimant "must assert more than a disagreement as to how the facts were weighed or evaluated”); see also Cacciola v. Gibson, 27 Vet.App. 45, 60 (2014) (“Although the Board is required to provide an adequate statement of reasons or bases for its determination whether the ... decision contained CUE, the Board does not reweigh the evidence.”).