LANCE, Judge,
with whom HAGEL, Judge, joins, concurring:
I fully join the majority’s opinion. I write separately to stress the importance of finality and to suggest a way to mitigate some concerns that might arise from a judge’s jurisprudential decision to review an abandoned issue on the merits.
Since the superposition of judicial review on an administrative system by the Veterans Judicial Review Act of 1988, 38 U.S.C. § 7251 ei seq., the Court has tried to walk a narrow slack wire between two stanchions with no net.[6] It is tasked with reconciling two methods to arrive at a decision in a matter and the underpinnings supporting each. On one hand is review by a court of law that, in the history of this country’s courts, has been adversarial in nature and with a view to finality — in other words, to absolutely resolve the matters disputed. On the other hand is the long-held position that claims of those who have borne the- burden of military service or their survivors should be treated to an uncomplicated, straightforward, and non-adversarial system. In short, when reviewing the denial of claims made by this class of people, we should be solicitous to them. Compare, e.g., Ribaudo v. Nicholson, 21 Vet.App. 137, 141 (2007) (“ We are not final because we are infallible, but we are infallible only because we are final.’ ” (quoting Brown v. Allen, 344 U.S. 443, 540, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Jackson, J., concurring))), with Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (explaining that “interpretive doubt is to be resolved in the veteran’s favor”); see King v. St. Vincent’s Hosp., 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991) (referring to “the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries’ favor”). It is against this backdrop that the Court is faced with the daunting task of balancing the doctrine of finality against the ability of a veteran to seek redress after the adjudication of his claim is final, in some cases years later. See 38 U.S.C. §§ 5109A, 7103, 7111. Fortunately, this balance is not only achievable, but the method of doing so has already been resolved, albeit in a different context.
“It is just as important that there should be a place to end as that there should be a place to begin litigation.” Stoll v. Gottlieb, 305 U.S. 165, 172, 59 S.Ct. 134, 83 L.Ed. 104 (1938). Indeed, finality is a bedrock principle of our judicial system. It provides certainty to the parties involved in a dispute, and it promotes judicial efficiency by discouraging piecemeal litigation. See, e.g., Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 170, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Radio Station WOW v. Johnson, 326 U.S. 120, 123-24, 65 S.Ct. 1475, 89 L.Ed. 569 (1945). In the veterans benefits context, when appealing a final Board decision to this Court, claimants have an obligation to raise all arguments to avoid piecemeal litigation. See Fugere v. Derwinski, 1 Vet.App. 103, 105 (1990) (“Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raises the undesirable specter of piecemeal litigation.”), aff’d, 972 F.2d 381 (Fed.Cir.1992). As the majority reaffirms, ante at 283-84, the Court not only has jurisdiction over each final denial contained in that decision, see *290 Fagre v. Peake, 22 Vet.App. 188, 191 (2008), it also has the exclusive authority to rule on each issue on appeal that falls under the umbrella of its statutorily authorized jurisdiction, see 38 U.S.C. §§ 7252 (providing that the Court “shall have exclusive jurisdiction to review decisions of the Board of Veterans’ Appeals”); 7261 (outlining the Court’s scope of review).
Consequently, when an appellant abandons an issue on appeal, this Court has the authority to nonetheless examine that issue, including the discretion to deem the abandonment a concession of no error in the Board decision. The rationale behind this is twofold: it provides an incentive to appellants to meet their obligation of raising all possible arguments on direct appeal, and it helps to alleviate the burden on VA’s overtaxed adjudication system[7] caused by subsequent collateral attacks on issues that could have been fully resolved on direct appeal to the Court. The idea of permitting a,litigant to waive important rights or litigating positions is applied even in cases of criminal defendants who face imprisonment when they do so. Peretz v. United States, 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) (explaining that even “[t]he most basic rights of criminal defendants are ... subject to waiver”).
For an appellant, there is simply no benefit to be gained by not raising an argument before the Court on direct appeal. Once the time to appeal a final Board decision expires, the appellant can thereafter generally only attack the Board’s decision on the basis of CUE — a far more onerous burden than challenging the decision on direct appeal. See King v. Shinseki, 26 Vet.App. 433, 436-37 (2014) (emphasizing “that [CUE] is ‘a very specific and rare kind of error,’ and the burden of demonstrating [CUE] is an onerous one”); see also Evans v. McDonald, 27 Vet.App. 180, 186 (2014) (en banc) (noting that “[t]he Court cannot review a CUE motion under the same standard by which it reviews matters on direct appeal”). Conversely, there is no disadvantage in raising a colorable argument at the Court, even if an appellant believes the odds of success to be low.
Generally, challenges to final decisions on the basis of CUE can be broken into two broad categories: “Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied.” Russell v. Principi 3 Vet.App. 310, 313 (1992) (en banc). The latter of these categories — that the law was incorrectly applied — can and should be raised on direct appeal to this Court, where a claimant has a much lower evidentiary burden to satisfy. See King, 26 Vet.App. at 441 (holding that to ‘“prove the existence of [CUE] ..., the claimant must show that an outcome-determinative error occurred,’ ” which “means that, absent the alleged clear and unmistakable error, the benefit sought would have been granted at the outset” (quoting Bustos v. West, 179 F.3d 1378, 1381 (Fed.Cir.1999))). In contrast, the former type of CUE — where the correct facts as known were not before the adjudicator — could, in the appropriate case, satisfy the Court’s criteria for recalling its mandate, which “may be exercised *291 ... to prevent injustice” or to “protect the integrity of its own processes.” Serra v. Nicholson, 19 Vet.App. 268, 271 (2005). Hence, although an appellant would lose the ability to challenge the Board’s decision on the basis of CUE, see 38 C.F.R. § 20.1400 (2014), there would be no practical consequence, as the appellant could still file a motion in this Court to recall its mandate in limited, but appropriate, circumstances.
It is not immediately clear why an appellant would make a knowing and voluntary litigation choice not to raise even a colorable argument on direct appeal, only to preserve the right to bring a collateral attack under a much higher standard of proof at a later date. Indeed, an appellant would not suffer harm from raising such an argument, rather than abandoning an issue. To further mitigate any remaining concerns arising from the merits review of abandoned issues, however, I would adopt a rule akin to that of Rule 60(b) of the Federal Rules of Civil Procedure, which is designed to “strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done.” Boughner v. Sec’y of Health, Educ., & Welfare, 572 F.2d 976, 977 (3d Cir.1978).
Rule 60(b) provides that, “[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding” for reasons including (1) mistake, (2) newly discovered evidence, (3) fraud, and “any other reason that justifies relief.” Fed. R.Crv.P. 60(b). “[Mjotions under Rule 60(b) must be made within a reasonable time — and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.” Fed. R. Civ. P. 60(c). By adopting a similar rule, the Court can ensure that an otherwise preclusive decision can be set aside when necessaiy in the interests of justice without compromising the Court’s interest in preserving the finality of its own decisions. This is not to say that Rule 60 should be copied wholesale from the Federal Rules and pasted into our own Rules of Practice and Procedure; naturally, accommodations must be made for the unique principles that have governed the law of veterans benefits as set forth by Congress and interpreted by the Court. Ultimately, however, this approach has the benefit of avoiding the situation created by Cacciola v. Gibson, 21 Vet.App. 45 (2014), where the Board is placed into the illogical position of “reviewing] the decision of a higher tribunal.” Winsett v. Principi, 341 F.3d 1329, 1331 (Fed.Cir.2003) (citing Disabled Am. Veterans v. Gober, 234 F.3d 682, 693 (Fed.Cir.2000)).
In short, recognizing this Court’s discretion to affirm on the merits abandoned issues encourages appellants to raise all arguments on appeal, avoids piecemeal litigation, and respects the finality of Board and Court decisions. Further, requiring parties to file a motion with the Court to recall mandate instead of asking the Board to divine the Court’s intent in prior decisions avoids the untenable situation of requiring the Board to review this Court’s decisions. Finally, to mitigate any remaining concerns from a merits review of abandoned issues, I would adopt a properly modified rule akin to Rule 60 of the Federal Rules of Civil Procedure — one which would effectuate the balance between the Court’s interest in finality and solicitude to those who have sacrificed so much.

. A slack wire requires the performer not only to navigate in a narrow straight line, but also to compensate for the sway caused by the wire's inherent instability.

. The vast breadth of the Department of Veterans affairs, which employs more than “312,841 full-time equivalent employees,”' and the tremendous burdens on the claims adjudication system, which in fiscal year 2013 “received over 1 million claims for disability benefits and processed 1,169,085 claims,” cannot be overstated. See Veterans Benefits Administration, Dep’t of Veterans Affairs, 2013 Performance and Accountability Report pt. I, at 1, 3 (2013).